KEKER, VAN NEST & PETERS LLP
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
ANJALI SRINIVASAN - # 304413
asrinivasan@keker.com
PAUL H. VON AUTENRIED - # 335917
pvonautenried@keker.com
CHARLOTTE KAMAI - # 344786
ckamai@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff THE PAC-12 CONFERENCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PAC-12 CONFERENCE,<br><br>                Plaintiff,<br><br>        v.<br><br>THE MOUNTAIN WEST CONFERENCE,<br><br>                Defendant. | Case No. 5:24-cv-6685-SVK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Date:        *To be set by Court [Dkt. 57]*<br>Time:        *To be set by Court [Dkt. 57]*<br>Courtroom: 6 – 4th Floor<br>Judge:       Hon. Susan van Keulen<br><br>Date Filed:  September 24, 2024<br><br>Trial Date:  July 6, 2027 |

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO ALL PARTIES AND COUNSEL OF RECORD**:

3

    **PLEASE TAKE NOTICE** that, at a date and time set by the Court as necessary and as

4

described in Docket No. 57, in the courtroom of the Honorable Susan van Keulen, located at the

5

Robert F. Peckham Federal Building, United States Courthouse, 280 South 1st Street, San Jose,

6

CA 95113, Plaintiff THE PAC-12 CONFERENCE (Pac-12), through its undersigned counsel,

7

will move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rules), to dismiss

8

Counts III, IV, and V of Defendant THE MOUNTAIN WEST CONFERENCE (MWC)'s

9

Counterclaims (ECF No. 50).

10

    The Pac-12's Motion to Dismiss (Motion) is based on this Notice, the accompanying

11

Memorandum of Points and Authorities, the complete files and records in this action, and

12

any additional materials and arguments as may be considered in connection with the hearing

13

on this Motion.

14

## STATEMENT OF RELIEF SOUGHT

15

    The Pac-12 seeks an order pursuant to Rule 12(b)(6) dismissing Counts III, IV, and V of

16

the MWC's Counterclaims for failure to state a claim upon which relief can be granted.

17

## ISSUES TO BE DECIDED

18

    The Motion presents the following issues to be decided: (1) whether Count III fails to

19

state a claim for promissory fraud; (2) whether Count IV fails to state a claim for tortious

20

interference with contractual relations; and (3) whether Count V fails to state a claim for

21

unjust enrichment or quasi-contract.

22

Dated: December 5, 2025                 KEKER, VAN NEST & PETERS LLP

23

                              By:   */s/ Eric H. MacMichael*

24

                                    ERIC H. MACMICHAEL
NICHOLAS S. GOLDBERG

25

                                    ANJALI SRINIVASAN
PAUL H. VON AUTENRIED

26

                                    CHARLOTTE KAMAI

27

                                    Attorneys for Plaintiff THE PAC-12
CONFERENCE

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................................1

II. BACKGROUND ................................................................................................2

    A.  Factual Background ...............................................................................2

    B.  The MWC's Counterclaims ...................................................................3

III. LEGAL STANDARD...........................................................................................4

IV. ARGUMENT .....................................................................................................4

    A.  The MWC fails to state a claim for promissory fraud (Count III)............................4

        1.  The MWC fails to allege any facts establishing that the Pac-12 had an intent to defraud at the time of contracting. .............................................5

        2.  The Economic Loss Rule bars the MWC's promissory fraud claim. ..........8

        3.  The MWC fails to allege the conduct constituting fraud with particularity as required by Rule 9(b). ...................................................9

    B.  The MWC fails to state a claim for tortious interference with contractual relations (Count IV). ...................................................10

        1.  The MWC's claim is based on "at will" contracts...................................11

        2.  The MWC alleges no independently wrongful act. ...................................12

    C.  The MWC fails to state a claim for unjust enrichment or quasi-contract (Count V). ...................................................13

    D.  Amendment would be futile.................................................15

V.  CONCLUSION................................................................................................16

3416553

1

<h1 style="text-align:center">TABLE OF AUTHORITIES</h1>

2

**Page(s)**

3

**Federal Cases**

4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................4

5

6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................................4

7

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) .................................................................................10

8

9

*Buena Vista, LLC v. New Resource Bank,*
    2010 WL 3448561 (N.D. Cal. Aug. 31, 2010) .......................................................12

10

*Cagno v. Supreme Mortg. Lending, Inc.,*
    2025 WL 445790 (N.D. Cal. Feb. 10, 2025) .........................................................10

11

12

*Cont'l Wall Paper Co. v. Louis Voight & Sons Co.,*
    212 U.S. 227 (1909) .................................................................................................14

13

*Cress v. Nexo Financial LLC,*
    2023 WL 6609352 (N.D. Cal. Oct. 10, 2023) .........................................................7

14

15

*Cruz v. Townsquare Media, Inc.,*
    2025 WL 2076626 (N.D. Cal. July 23, 2025) ..........................................................5

16

*Doe v. Garland,*
    17 F.4th 941 (9th Cir. 2021) ....................................................................................16

17

18

*ESG Cap. Partners, LP v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016) .................................................................................15

19

20

*Flowers v. Wells Fargo Bank, N.A.,*
    2011 WL 2748650 (N.D. Cal. July 13, 2011).........................................................9

21

*Gompper v. VISX, Inc.,*
    298 F.3d 893 (9th Cir. 2002) ..................................................................................15

22

23

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.,*
    2023 WL 1768120 (N.D. Cal. Feb. 2, 2023) ..........................................................4

24

25

*Infanzon v. Allstate Ins. Co.,*
    2019 WL 5847833 (C.D. Cal. Nov. 6, 2019)..........................................................5

26

*Jones v. AIG Risk Mgmt. Inc.,*
    726 F. Supp. 2d 1049 (N.D. Cal. 2010) ..................................................................6

27

28

ii

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

*Kaiser Steel Corp. v. Mullins*,
455 U.S. 72 (1982)..................................................................................................14

*Kelley v. Fundomate, Inc.*,
773 F. Supp. 3d 899 (C.D. Cal. 2025) ......................................................................8

*Laatz v. Zazzle, Inc.*,
682 F. Supp. 3d 791 (N.D. Cal. 2023) ......................................................................7

*Laub v. Horbaczewski*,
2024 WL 3466876 (C.D. Cal. July 11, 2024), *reconsideration denied*, 2024
WL 5338661 (C.D. Cal. Nov. 26, 2024)....................................................................9

*Pattern Design LLC v. We are Sechey Inc.*,
2024 WL 4369668 (N.D. Cal. Oct. 1, 2024).....................................................6, 8, 9

*R Power Biofuels, LLC v. Chemex LLC*,
2017 WL 1164296 (N.D. Cal. Mar. 29, 2017)...........................................................7

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
769 F. Supp. 3d 1067 (N.D. Cal. 2025) ....................................................................5

*Richardson v. Reliance Nat'l Indem. Co.*,
2000 WL 284211 (N.D. Cal. Mar. 9, 2000)...............................................................6

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023)...................................................................15

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ..................................................................................6

*Simila v. Am. Sterling Bank*,
2010 WL 11442911 (S.D. Cal. Apr. 27, 2010)........................................................15

*Smith v. Cnty. of Santa Cruz*,
2018 WL 317846 (N.D. Cal. Jan. 8, 2018), *aff'd*, 731 F. App'x 682 (9th Cir.
2018) ........................................................................................................................16

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..................................................................................10

*Synology Inc. v. Via Licensing Corp.*,
2023 WL 3149250 (N.D. Cal. Mar. 1, 2023)..............................................................9

*The Manning Grp. LLC v. Neudesic LLC*,
2024 WL 3543472 (C.D. Cal. May 14, 2024).............................................................9

*Thompson v. Carmax*,
2023 WL 4034215 (N.D. Cal. Apr. 27, 2023), *report and recommendation
adopted*, 2023 WL 4995718 (N.D. Cal. May 31, 2023) ............................................6

iii

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

*Tremblay v. OpenAI Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024) ................................................................15

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................7, 9

*Valentine v. Progressive Direct Ins. Co.*,
   2022 WL 3083714 (N.D. Cal. Aug. 3, 2022) ....................................................4, 6

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..........................................................................4, 9

*Wilshire Assocs., Inc. v. Ashland Partners & Co., LLP*,
   2010 WL 11505571 (C.D. Cal. Sept. 7, 2010) ..................................................15

**State Cases**

*Coast Hematology-Oncology Assocs. Med. Grp., Inc. v. Long Beach Mem'l Med.
   Ctr.*,
   58 Cal. App. 5th 748 (2020) ..........................................................................11, 13

*Dinosaur Dev., Inc. v. White*,
   216 Cal. App. 3d 1310 (1989) ...........................................................................14

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020) ................................................................................*passim*

*Jacob B. v. Cnty. of Shasta*,
   40 Cal. 4th 948 (2007) .........................................................................................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .....................................................................................11

*Lauriedale Assocs., Ltd. v. Wilson*,
   7 Cal. App. 4th 1439 (1992) ..............................................................................14

*Lazar v. Superior Ct.*,
   12 Cal. 4th 631 (1996) .........................................................................................5

*Magpali v. Farmers Grp., Inc.*,
   48 Cal. App. 4th 471 (1996), *as modified on denial of reh'g* (Aug. 20, 1996) ........6

*Rattagan v. Uber Techs., Inc.*,
   17 Cal. 5th 1 (2024) .........................................................................................8, 9

*Reeder v. Specialized Loan Servicing LLC*,
   52 Cal. App. 5th 795 (2020) ...............................................................................8

*Simon v. San Paolo U.S. Holding Co. Inc.*,
   35 Cal. 4th 1159 (2005) ......................................................................................8

iv

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

*Tarlesson v. Broadway Foreclosure Invs., LLC*,
   184 Cal. App. 4th 931 (2010) ................................................................................14

*Tenzer v. Superscope, Inc.*,
   39 Cal. 3d 18 (1985) ..............................................................................................6

*Union Flower Market, Ltd. v. So. Cal. Flower Market, Inc.*,
   10 Cal. 2d 671 (1938) ............................................................................................5

**Rules**

Fed. R. Civ. Proc. 9(b) ..................................................................................... *passim*

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................4

3416553

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3

This case is about the Mountain West Conference's (MWC) Poaching Penalty—an

4    anticompetitive and unlawful provision the MWC insisted on inserting into a short-term football

5    Scheduling Agreement when the Pac-12 Conference (Pac-12) was vulnerable and had little

6    leverage. The Poaching Penalty seeks to restrain ordinary, lawful competition for MWC member

7    schools by imposing severe financial penalties on the MWC's most logical competitor: the Pac-

8    12. After failing to derail the Pac-12's claims challenging that unlawful penalty, the MWC now

9    advances a set of legally defective Counterclaims designed to change the subject. The MWC

10    baselessly accuses the Pac-12 of fraud, tortious interference, and unjust enrichment. These

11    Counterclaims reveal precisely why it sought the Poaching Penalty in the first place: to deter fair

12    competition the MWC sought to avoid. In addition to being distractions from the core issue in this

13    case, each of the Counterclaims discussed below is meritless and should be dismissed.[1]

14    The MWC's fraud claim (Count III) attempts to manufacture a fraud theory out of a

15    straightforward contract dispute. Rule 9(b) requires fraud to be pleaded with specificity, but the

16    MWC's counterclaim offers none. Conceding that it cannot meet the applicable pleading

17    standard, the MWC pleads fraud "on information and belief," alleging no speaker, no statement,

18    no date, and no context. Nor does the MWC allege any facts showing that, at the time of

19    contracting, the Pac-12 secretly intended not to perform. All the MWC has pleaded is its belief

20    that the Pac-12 always intended to challenge the Poaching Penalty in court. That is not fraud; it is

21    (inaccurate) speculation. The claim is also legally barred by the economic loss rule because it

22    rests on nothing more than alleged nonperformance of contractual duties and seeks the exact same

23    monetary award as the MWC's contract claim.

24    The MWC's tortious interference with contract claim (Count IV) fares no better. The

25    MWC's own bylaws expressly permit members to withdraw from the conference upon notice.

26

27

28

---

[1] The Pac-12 is not moving to dismiss the MWC's first two causes of action, for declaratory relief
and breach of contract, which mirror the Pac-12's claims that the Poaching Penalty is invalid and
unenforceable.

1
PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

1   Under binding California law, interference with an at-will contract requires an "independently

2   wrongful act." *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020). The MWC

3   alleges none. The Pac-12 merely accepted applications from five MWC schools for membership

4   beginning July 1, 2026, *after* the MWC's current media rights arrangement expires. And far from

5   interfering with the schools' payment of exit fees imposed by the MWC, the Pac-12 (as the MWC

6   concedes) offered to help the schools pay. California law protects this lawful competition,

7   especially where the schools were free to depart. The MWC cannot use tort law to chain members

8   to its conference and prevent fair competition.

9         Finally, the MWC's "alternative" unjust enrichment claim (Count V) is a back-door

10   attempt to recover the same damages in the event the Court declares the Poaching Penalty

11   unlawful. But the MWC cannot recover in equity for a contractual provision that is declared

12   illegal and unenforceable. And there is nothing "unjust" to disgorge: the Scheduling Agreement

13   required payment for football games, and the Pac-12 paid (over $14 million for just twelve

14   games). The MWC's dissatisfaction that it may not extract *more* than those fees if the Poaching

15   Penalty is declared unlawful does not state a claim in equity.

16         These Counterclaims are meritless diversions from the real issue at the heart of this case:

17   the legality (or illegality) of the Poaching Penalty. Because none plausibly states a claim for

18   relief, and none can be amended to do so, the Court should dismiss Counts III, IV, and V with

19   prejudice.

20   **II.    BACKGROUND**

21         **A.    Factual Background**

22         The Pac-12 and the MWC are both Division I collegiate athletic conferences. MWC's

23   Counterclaims ("CC") ¶ 8. The Pac-12 and the MWC compete with one another to recruit

24   member schools. After ten Pac-12 members announced departures from the conference in late

25   summer 2023, the Pac-12 signed a "Scheduling Agreement" with the MWC to schedule football

26   games among its remaining members—Oregon State University (OSU) and Washington State

27   University (WSU)—and the MWC's schools for the 2024-2025 season. CC ¶¶ 41–42. The Pac-12

28   paid the MWC over $14 million dollars to schedule the football games. *See* CC ¶ 88.

2
PLAINTIFF'S NOTICE OF MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

Separate and apart from the fees for football games, the Scheduling Agreement contains a provision entitled "Termination Fees" (which the Pac-12 refers as the "Poaching Penalty"), under which the Pac-12 "shall pay liquidated damages to [the] MWC" ranging from $10 million to $137.5 million if "the Pac-12 makes an offer to any MWC Member Institution (other than an offer to all MWC Member Institutions) . . . to join the Pac-12," and the school accepts. CC ¶¶ 45-46.

In September 2024, five members of the MWC—San Diego State, Colorado State, Fresno State, Boise State, and Utah State—accepted offers to join the Pac-12 beginning in the 2026-2027 season. CC ¶¶ 70, 72. After the announcement of those departures, the MWC demanded that the Pac-12 pay $55 million pursuant to the Poaching Penalty. CC ¶ 72. In addition to attempting to force the Pac-12 to pay a multimillion dollar sum under the Poaching Penalty, the MWC intends to collect tens of millions in "Exit Fees" allegedly due under the MWC's Bylaws from each of the departing schools themselves. *See* CC ¶ 98.

### B.    The MWC's Counterclaims

The MWC brings five Counterclaims. As relevant to this Motion, the MWC brings Counterclaims for promissory fraud, tortious interference with contractual relations, and (in the alternative) unjust enrichment or quasi-contract.

Count III, the promissory fraud claim, alleges that when the Pac-12 signed the Scheduling Agreement, the Pac-12 intended to recruit only some MWC schools but subsequently "refuse[d] to pay" the Poaching Penalty and was "lying in wait and preparing to assert this very lawsuit." CC ¶¶ 124, 128. The Counterclaim contains no facts supporting these allegations but rather offers these conclusions "[u]pon information and belief." *Id.* ¶ 127.

Count IV, the tortious interference claim, alleges that the Pac-12 interfered with the departing MWC schools' existing "contractual obligations" to the MWC. CC ¶ 131. But the MWC concedes that the departing MWC schools are joining the Pac-12 *after* the MWC's current grant of media rights expires; that, under the MWC Bylaws, MWC members are *permitted* to leave the MWC upon delivering timely notice; and that the Pac-12 offered to help departing MWC members *perform* by making "contributions" toward the departing MWC schools' exit

fees. CC ¶¶ 134, 137–141, 147.

Count V, the unjust enrichment or quasi-contract claim, alleges that if the Poaching Penalty is unlawful, the MWC is nevertheless entitled to restitution "in the amount of all benefits unjustly retained by the Pac-12" and disgorgement of "any profits obtained as a result of the unjust enrichment." CC ¶¶ 149, 157; *see also id.* ¶¶ 150–51, 153 (listing purported "benefit[s]" of football games). In other words, the MWC asks the Court to provide them with a financial windfall, even if the Court finds that the Poaching Penalty is invalid or violates antitrust law.

The Pac-12 moves to dismiss these three Counterclaims because none state a plausible claim for relief, and none can be amended to do so.

## III.    LEGAL STANDARD

A motion to dismiss counterclaims is "evaluated under the same standard as a motion to dismiss a plaintiff's complaint" under Rule 12(b)(6). *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, 2023 WL 1768120, at *3 (N.D. Cal. Feb. 2, 2023). A pleading must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires "more than a sheer possibility" that the counter-defendant has "acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts generally accept the non-movant's factual allegations as true for the purposes of a motion to dismiss, that presumption "is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* Where, as here, the pleader makes "[a]verments of fraud," a heightened pleading standard applies under Rule 9(b): the pleader must allege with specificity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation modified).

## IV.    ARGUMENT

### A.    The MWC fails to state a claim for promissory fraud (Count III).

The MWC attempts to repackage this ordinary contract dispute into a fraud claim. Its Counterclaims contain precisely the sort of "general allegation that the defendant never intended to keep [its contractual] promise" that courts routinely reject. *See, e.g.*, *Valentine v. Progressive Direct Ins. Co.*, 2022 WL 3083714, at *5 (N.D. Cal. Aug. 3, 2022) (van Keulen, J.) (quoting

4
PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

1  *Infanzon v. Allstate Ins. Co.*, 2019 WL 5847833, at *10 (C.D. Cal. Nov. 6, 2019)). The MWC

2  alleges **no** facts supporting fraud, much less the particularized facts Rule 9(b) requires. Its

3  allegations—made "on information and belief"—underscore the absence of any factual basis for

4  its claim. The Pac-12 did not secretly plan all along to defraud the MWC; it merely challenged,

5  through this lawsuit, a Poaching Penalty that it believes is unlawful. That is protected and

6  perfectly permissible litigation activity, not fraud.[2]

7
8        **1.  The MWC fails to allege any facts establishing that the Pac-12 had an intent to defraud at the time of contracting.**

9      "The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or

10  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce

11  reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631,

12  638 (1996) (citing, *inter alia*, Cal. Civ. Code § 1709)). "'Promissory fraud' is a subspecies of the

13  action for fraud and deceit" involving a promise made without the intention to perform. *Id.* (citing

14  *Union Flower Market, Ltd. v. So. Cal. Flower Market, Inc.*, 10 Cal. 2d 671, 676 (1938)). Thus,

15  "[a] plaintiff asserting a promissory fraud claim must set forth ***facts*** that, if true, would show that

16  the defendant made a promise to him that it had no intention of performing." *Cruz v. Townsquare*

17  *Media, Inc.*, 2025 WL 2076626, at *9 (N.D. Cal. July 23, 2025) (emphasis added).

18      Here, the MWC has alleged no such facts. The MWC makes only boilerplate allegations

19  that the Pac-12's representations "were false" and that the "Pac-12 knew these representations

20  were false when made" because they "intended" to recruit fewer than all MWC schools and then

21  refuse to pay the penalties. CC ¶ 124. Tellingly, the MWC includes **no** allegations of

22  contemporaneous statements or actions suggesting that, at the time of contracting, the Pac-12 had

23  any intention other than to perform its obligations. Instead, the MWC makes its fraud allegations

24
25    [2] The MWC may not rely on the Pac-12's filing of this lawsuit to support its fraud claim—that

26  conduct is protected by the *Noerr-Pennington* doctrine and the litigation privilege. *See Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1084 (N.D. Cal. 2025) ("Because initiating and participating in litigation is one method of petitioning the government, litigation-

27  related conduct falls within the scope of *Noerr-Pennington*."); *Jacob B. v. Cnty. of Shasta*, 40 Cal.

28  4th 948, 955 (2007) ("The [litigation] privilege applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation.").

"on information and belief" alone, CC ¶ 127, confirming that its fraud theory rests on speculation rather than particularized facts, *see Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (claims made "on information and belief" are not particular enough, "unless they accompany a statement of ***facts*** on which the belief is founded." (emphasis added)).

Indeed, the MWC "simply points to [the] statement" in the Scheduling Agreement that certain sums are due pursuant to the Poaching Penalty, "not[es] that the content of th[at] statement conflicts with the current state of affairs" (*i.e.*, no payment was made), and then "conclud[es] that the statement in question was false when made." *Thompson v. Carmax*, 2023 WL 4034215, at *3 (N.D. Cal. Apr. 27, 2023), *report and recommendation adopted*, 2023 WL 4995718 (N.D. Cal. May 31, 2023). But that type of conclusory pleading about a contractual term is "not enough," since, clearly, a mere "failure to perform a contract does not constitute fraud." *Id.*; *cf. Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) (alleging that "a promise was made and . . . not fulfilled" is "never" sufficient to state a claim for promissory fraud).

Requiring more from a plaintiff asserting promissory fraud makes sense: if plaintiffs could proceed on allegations as thin as those in the MWC's Counterclaims, "every breach of contract claim would support a claim of fraud" so long as the plaintiff includes a conclusory statement that "the defendant never intended to keep her promise." *Valentine*, 2022 WL 3083714, at *5 (citation omitted); *accord Richardson v. Reliance Nat'l Indem. Co.*, 2000 WL 284211 at *5 (N.D. Cal. Mar. 9, 2000). Yet courts have repeatedly held that "a party alleging promissory fraud must plead 'something more than nonperformance . . . to prove the defendant's intent not to perform his promise.'" *See Tenzer*, 39 Cal. 3d at 30; *Pattern Design LLC v. We are Sechey Inc.*, 2024 WL 4369668, at *6 (N.D. Cal. Oct. 1, 2024) (dismissing claim where plaintiff "allege[d] that [defendant] committed promissory fraud by 'entering into the Contract with the intention of deceiving [plaintiff] into believing [defendant] was going to pay [plaintiff] according to the [payment] schedule set forth'"); *Jones v. AIG Risk Mgmt. Inc.*, 726 F. Supp. 2d 1049, 1057–58 (N.D. Cal. 2010) (dismissing fraud claim premised on subsequent "failure to perform"); *Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996), *as modified on denial of reh'g* (Aug. 20, 1996) ("[I]f [a] plaintiff adduces no further evidence of fraudulent intent than proof of

6

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

1    nonperformance . . . he will never reach a jury." (citation omitted)); *UMG Recordings, Inc. v.*

2    *Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1110 (C.D. Cal. 2015) (dismissing fraud claim

3    where "[t]he only allegation in the complaint that might give rise to an inference that the promise

4    was made with no intention of performing is the fact that plaintiffs allegedly did not honor it").

5         At most, the MWC attempts to concoct a negative inference of fraudulent intent by

6    alleging that, during the Scheduling Agreement negotiations, the Pac-12: (1) "never stated that it

7    believed Section 7.01 was unenforceable pursuant to antitrust laws"; and (2) "did not attempt to

8    eliminate or lower the Termination Fees." CC ¶¶ 125–26. These conclusory allegations show only

9    that the Pac-12 had limited bargaining power and leverage during the negotiations, not that it

10   secretly planned to defraud the MWC (which it did not). Agreeing to a contractual term under

11   economic pressure is not evidence of deceit—it is evidence of necessity.

12        Moreover, these allegations are dramatically different from those courts in this district

13   have found sufficient to infer an intent not to fulfill a contractual promise. In *Laatz v. Zazzle, Inc.*,

14   682 F. Supp. 3d 791 (N.D. Cal. 2023), the court permitted a promissory fraud claim to proceed

15   where the defendant immediately violated a contractual promise by distributing single-use

16   licenses to all of its customers. *Id.* at 813. In *Cress v. Nexo Financial LLC*, 2023 WL 6609352

17   (N.D. Cal. Oct. 10, 2023), the defendant induced plaintiffs to contract for a program that

18   "effectively" did not exist at the time of the alleged misrepresentations. *Id.* at *9–11. And in *R*

19   *Power Biofuels, LLC v. Chemex LLC*, 2017 WL 1164296 (N.D. Cal. Mar. 29, 2017), the

20   defendant ***repeatedly*** assured the Plaintiff that it would perform certain repairs while

21   simultaneously taking no action to do so. *Id.* at *11–12. In each of these cases, there was

22   ***contemporaneous conduct*** demonstrating that the promise was not or could not have been true,

23   either because the party violated the promise nearly simultaneously, or because the promise was

24   at odds with the reality at the time ***of the contract***.

25        Here, by contrast, the MWC alleges no contemporaneous conduct at odds with the

26   promise at issue. The MWC's own pleading concedes that the Pac-12 performed the valid

27   provisions of Scheduling Agreement, including paying the MWC $14 million to play just twelve

28   football games. CC ¶ 42. The MWC has done nothing but speculate that the Pac-12 never

7

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

1   intended to pay the Poaching Penalty, which is "the very sort of general and conclusory

2   allegations that are insufficient to state a fraud claim." *Reeder v. Specialized Loan Servicing LLC*,

3   52 Cal. App. 5th 795, 804 (2020). A claim of promissory fraud must rest on something more.

### 2.    The Economic Loss Rule bars the MWC's promissory fraud claim.

5   The MWC's promissory fraud theory fails for an additional, independent reason: it is

6   barred by the economic loss rule, which limits tort recovery for what is fundamentally a contract

7   dispute. As the California Supreme Court recently affirmed, "the economic loss rule was

8   developed to ensure that the law of contract would not 'drown in a sea of tort.'" *Rattagan v. Uber*

9   *Techs., Inc.*, 17 Cal. 5th 1, 20 (2024). Recovering in tort for a breach of contract "is generally

10  barred" unless two conditions are satisfied: (1) the "injury-causing conduct violated a duty that is

11  independent of the duties and rights assumed by the parties when they entered the contract," and

12  (2) "the defendant's conduct must have caused injury to persons or property that was not

13  reasonably contemplated by the parties when the contract was formed." *Id.* at 20–21. Neither

14  condition is remotely satisfied here.

15  Here, the MWC's theory rests solely on what the Pac-12 "expressly represented in the

16  Scheduling Agreement," *i.e.*, that it would "be contractually bound to pay" the Poaching Penalty.

17  *See* CC ¶ 39. The MWC alleges no conduct "*independent* from the various promises made by the

18  parties in the course of their contractual relationship." *Pattern Design*, 2024 WL 4369668, at *8

19  (citation omitted). Accordingly, "the alleged breach is based on [the same] failure to perform as

20  the contract provides, and the parties reasonably anticipated and allocated the risks associated

21  with the breach," so there can be no independent tort claim. *Rattagan*, 17 Cal. 5th at 27.

22  The duplicative nature of MWC's fraud claim is further evidenced by the MWC's alleged

23  damages: it seeks the same $55 million for both breach of contract (Count I) and promissory

24  fraud (Count III).[3] *Compare* CC ¶ 117, *with id.* ¶ 129. The MWC's fraud claim is the sort that

---

[3] In its attempt to transform this contract dispute into a fraud claim, the MWC forgets that "under
California law, a fraud plaintiff cannot recover benefit-of-the-bargain damages, with the possible
exception of fraud by a fiduciary." *Kelley v. Fundomate, Inc.*, 773 F. Supp. 3d 899, 927–28 (C.D.
Cal. 2025) (citing *Simon v. San Paolo U.S. Holding Co. Inc.*, 35 Cal. 4th 1159, 1176 n.4 (2005)).
Instead, the MWC would be limited "to recovering [its] out-of-pocket loss." *Id.* at 926.

"will generally sound only in contract because [the alleged] breach deprives an injured party of a benefit it bargained for." *Rattagan*, 17 Cal. 5th at 27. As this Court and others have held, if the "statements on which [a] promissory fraud claim relies were nothing more than representations that [the defendant] would adhere to the Contract[,] they cannot form the basis of a separate fraud claim." *Pattern Design*, 2024 WL 4369668, at *8; *see also Synology Inc. v. Via Licensing Corp.*, 2023 WL 3149250, at *3 (N.D. Cal. Mar. 1, 2023); *Laub v. Horbaczewski*, 2024 WL 3466876, at *16 (C.D. Cal. July 11, 2024), *reconsideration denied*, 2024 WL 5338661 (C.D. Cal. Nov. 26, 2024) ("District courts have barred fraud claims under the economic loss doctrine where 'the misrepresentation that forms the basis of the fraud claim is the contract itself.'").

In short, the economic loss rule bars the MWC from attempting to "recast [its] allegations underpinning a straightforward breach of contract claim as torts." *The Manning Grp. LLC v. Neudesic LLC*, 2024 WL 3543472, at *7 (C.D. Cal. May 14, 2024) (internal quotations omitted).

### 3.    The MWC fails to allege the conduct constituting fraud with particularity as required by Rule 9(b).

Finally, separate and apart from MWC's fatal failure to allege ***any*** facts supporting the required intent element, MWC's spare allegations of fraud are vague and unspecific. In other words, MWC's fraud claim should be dismissed for the additional independent reason that it falls far short of the particularity requirements under Rule 9(b). That rule requires a litigant asserting a fraud claim to include allegations of "'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. "For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1107 (quoting *Flowers v. Wells Fargo Bank, N.A.*, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011)).

The MWC's allegations do not come close to meeting the Rule 9(b) standard. Rather than identifying a single individual, statement, or date, the MWC refers only to generic statements by "the Pac-12" concerning the Poaching Penalty and a vague timeframe for the negotiations. CC ¶ 123 ("The Pac-12 represented . . . that it would pay . . . orally and in writing, specifically, in the

9

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

form of the Scheduling Agreement and the negotiations thereof.").  It alleges nothing about *who* made the alleged misrepresentations, *to whom* they made those representations, their *authority* to speak on behalf of the Pac-12, or specific *dates and times* at which the alleged misrepresentations occurred. Again, "[s]imply restating a breach of contract claim coupled with additional general averments that the accused breaching party never intended to perform under the contract, without any details, is not a sufficient pleading of a fraud cause of action." *Cagno v. Supreme Mortg. Lending, Inc.*, 2025 WL 445790, at *5 (N.D. Cal. Feb. 10, 2025) (dismissing fraud claim where "Plaintiff [did] not allege who specifically made [the] promise, what specific statements were made, when and where the statements were made, or how they were made").

The "lack of specificity" in the MWC's allegations is fatal. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (noting "the lack of specificity" in the plaintiff's fraud allegations "provides an independent reason . . . to affirm . . . dismissal" (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Courts routinely dismiss fraud claims which appear on their face to be conclusory attempts to transform a breach of contract claim into a tort claim." *Cagno*, 2025 WL 445790, at *5. This is precisely such a case.

In sum, the MWC's allegations show no intent to defraud, are barred by the economic loss rule, and fail to meet Rule 9(b)'s heightened pleading standard. The MWC's promissory fraud cause of action should be dismissed with prejudice because it suffers from each of these independent flaws.

### B.    The MWC fails to state a claim for tortious interference with contractual relations (Count IV).

The MWC's tortious interference claim likewise fails. It rests on member schools' at-will contractual relationships with the MWC—relationships that any school could terminate unilaterally—and the MWC pleads no "independently wrongful act" by the Pac-12, as required by the California Supreme Court in *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020).

To state a claim for tortious interference with contractual relations, the claimant must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a

10

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Id.* at 1141. Where, as here, the claim is premised on an at-will contract, the claimant also must allege that the defendant engaged in an "independently wrongful act"—that is, conduct that is "proscribed by some constitutional, statutory, regulatory, or common law, or some other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1138 (2003). Even acting with an "improper motive"—which the Pac-12 did not have—does ***not*** alone suffice, *id.*, because parties to at-will contracts have "no legal assurance of future economic relations," *Ixchel*, 9 Cal. 5th at 1147–48, 1162. Without an independently wrongful act, "a competitor's good faith offer that causes a business to withdraw from an at-will contract could trigger liability or at least subject the competitor to costly litigation," chilling legitimate competition. *See id.* at 1148.

### 1.  The MWC's claim is based on "at will" contracts.

"An at-will contract may be terminated, by its terms, at the prerogative of a single party, whether it is because that party found a better offer from a competitor, because the party decided not to continue doing business, or for some other reason." *See Ixchel*, 9 Cal. 5th at 1147. Agreements to transact at "regular intervals," where renewal is up for negotiation, are at-will contracts. *See id.* Because one party can terminate at will, "the other party has no legal claim to the continuation of the relationship." *See Coast Hematology-Oncology Assocs. Med. Grp., Inc. v. Long Beach Mem'l Med. Ctr.*, 58 Cal. App. 5th 748, 767 (2020).

Here, the MWC alleges the Pac-12 interfered with the MWC's membership agreements and bylaws. *See* CC ¶ 131 (listing MWC Bylaws, MWC Handbook, and "respective membership agreement obligations"). As the MWC concedes, those bylaws ***permit*** any MWC member to "resign from the conference"—for ***any reason***—by "providing written notice" and paying an exit fee. *See* CC ¶¶ 132 n.81 at § 1, 134. No vote, approval, or agreement by the MWC is required to end the relationship; any school can withdraw from the conference and terminate its membership obligations. MWC membership is thus the classic at-will relationship described in *Ixchel*, which may be terminated by a party upon notice. *See Ixchel*, 9 Cal. 5th at 1145. Because any school could unilaterally withdraw, the MWC had no "legal assurance" that its members would remain

11

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

in the conference. *See id.* at 1145, 1147. Consequently, the MWC must allege an "independently wrongful act"—but it does not.

### 2.    The MWC alleges no independently wrongful act.

Although the MWC's allegations regarding the Pac-12's "interference" are difficult to parse, even interpreted most generously, none satisfy *Ixchel*'s requirement that the MWC plead an "independently wrongful act."

**First**, the Pac-12's acceptance of departing MWC schools, CC ¶¶ 77–85, did not "breach or disrupt[] . . . [a] contractual relationship," much less involve any wrongful conduct, *Ixchel*, 9 Cal. 5th at 1141. The departing MWC schools all applied to join the Pac-12 effective July 1, 2026. *See* CC ¶¶ 70, 72. The Pac-12's acceptance could not have interfered with those schools' membership agreements with the MWC because, as the MWC admits, each school was expressly authorized under MWC bylaws to leave after "June 30 of a given year." *Id.* ¶ 134. Moreover, the departing MWC schools' grant of rights and the MWC's current media deal expires in May 2026—**before** those schools will join the Pac-12. The MWC points to no agreement that requires those schools to remain in the MWC for the 2026–2027 season or any later one. The Pac-12's acceptance of those schools' applications to join the Pac-12 in **future** seasons did not breach or interfere with those schools' **then-current** obligations to the MWC. Because each departing MWC school was free to withdraw from the MWC, the Pac-12's acceptance of those schools cannot be "wrongful." *See Buena Vista, LLC v. New Resource Bank*, 2010 WL 3448561, at *9–10 (N.D. Cal. Aug. 31, 2010) (no independent wrong where contract permitted alleged breach).

**Second**, the MWC's allegations regarding the **departing schools'** purported "conflict[s] of interest," *see* CC ¶¶ 133, 142, do not allege any wrongful act **by the Pac-12**. The MWC does not explain how, for example, Utah State's president's attendance at "a special MWC board meeting despite an [alleged] obvious conflict of interest" was caused by the Pac-12. *See* CC ¶ 142. The MWC alleges **no** action by the Pac-12 related to any MWC board member's activities. The MWC admits as much when it alleges only that the departing members breached obligations "**while aligned** with the Pac-12's plan" or brought litigation against the MWC "**parroting** [the Pac-12's] theories," *see* CC ¶¶ 142, 144 (emphases added); notably absent is anything the **Pac-12 actually**

12

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

1  *did*. Without any "intentional act[] designed to induce a breach or disruption," the MWC's claim

2  that the Pac-12 "interfered" fails. *See Ixchel*, 9 Cal. 5th at 1141.

3       ***Third***, the MWC's allegations regarding exit fees are self-defeating. Far from alleging that

4  the Pac-12 ***interfered*** with those payments, the MWC concedes that the Pac-12 did the opposite.

5  The Pac-12 offered to "contribut[e]" to the departing schools' payment of exit fees. CC ¶ 139.

6  Indeed, if the Pac-12 "promised financial assistance" to the departing MWC schools as the MWC

7  alleges, that would only make it ***more*** likely that those schools would pay any exit fees they may

8  owe. *See id.* ¶ 141. If anything, the Pac-12 thus engaged in the ***facilitation*** of MWC's

9  performance, not interference. Finally, the MWC fails to allege any facts showing the Pac-12

10  "coordinated" the Colorado litigation, to which the Pac-12 is not a party. *See id.* ¶ 143.

11       Ultimately, the MWC's tortious interference claim would make ordinary, fair competition

12  unlawful. As the California Supreme Court cautioned in *Ixchel*, the law of tortious interference

13  should not be twisted to punish "legitimate business competition." 9 Cal. 5th at 1148. The

14  departing schools were free to leave, and the Pac-12 was free to accept their applications for

15  future membership. The MWC's tortious interference claim, like its unlawful Poaching Penalty, is

16  "doubly anticompetitive" because it "chain[s] [the departing schools] to their old" conference and

17  deters competition from competitor conferences. *See Coast*, 58 Cal. App. 5th at 768.

18       Because the MWC's member agreements are terminable at will and the MWC alleges no

19  independently wrongful act, its tortious interference claim fails as a matter of law. Count IV

20  should therefore be dismissed with prejudice.

21       **C.    The MWC fails to state a claim for unjust enrichment or quasi-contract
22             (Count V).**

23       Finally, the MWC's "alternative" claim—which assumes that the Poaching Penalty is

24  declared illegal and unenforceable but posits that the MWC can still somehow recover the same

25  damages under an unjust enrichment theory—fails for two independent reasons. First, California

26  and federal law make clear that a party cannot recover in unjust enrichment where the underlying

27  contractual provision is declared illegal, including where it violates antitrust law. Second, the

28  MWC does not and cannot plead that any benefit to the Pac-12 was "unjust" because the Pac-12

3416553

1    fully paid for the only benefit it received under the Scheduling Agreement: twelve football games.

2        **First**, as a matter of law, the MWC cannot bring an unjust enrichment claim to recover

3    under an illegal provision of the contract. California courts routinely hold that parties cannot

4    recover in unjust enrichment where doing so would "violat[e] or frustrat[e] [the] law or oppos[e]

5    public policy." *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989); *see also*

6    *Tarlesson v. Broadway Foreclosure Invs., LLC*, 184 Cal. App. 4th 931, 938 (2010) (declining to

7    apply doctrine of unjust enrichment on behalf of lender where doing so would "frustrate" the

8    legal protections for homeowners); *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439,

9    1448 (1992) (rejecting unjust enrichment theory where party who breached fiduciary duty sued

10    victim for recovery because it would frustrate the purpose of fiduciary duty law). And the

11    Supreme Court has repeatedly declined to enforce promises under contracts that are illegal under

12    the antitrust laws, explaining that "permit[ting] [such] recovery . . . is in substance to enforce an

13    illegal contract." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77–79 (1982) (reversing lower court

14    decision that prevented party from asserting contract illegality as defense to liability); *see also*

15    *Cont'l Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 261 (1909) (rejecting relief for

16    plaintiff who conceded its contract violated antitrust laws, because such a result "will be to give

17    the aid of the court in making effective the illegal agreements that constituted the forbidden

18    combination").

19        These principles apply directly here. The MWC brings this claim in the alternative,

20    **assuming that** the Poaching Penalty is declared illegal by the Court. But should this Court declare

21    the Poaching Penalty illegal, "to permit a[ny] recovery in this case is in substance to enforce an

22    illegal contract." *Kaiser*, 455 U.S. at 77. Allowing the MWC to recover would not only frustrate

23    the purpose of the antitrust laws, *see Tarlesson*, 184 Cal. App. 4th at 938, but it would also

24    inherently require the Court to "command[] unlawful conduct" by forcing the Pac-12 to pay an

25    illegal contract penalty via an equitable backdoor claim, *see Kaiser*, 455 U.S. at 79. The law does

26    not permit the MWC to resurrect an illegal penalty provision under the guise of "unjust

27    enrichment." *See Cont'l Wall Paper*, 212 U.S. at 261 ("[A] court will not lend its aid, in any way,

28    to a party seeking to realize the fruits of an agreement that . . . [is] tainted with illegality.").

14
PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

**Second**, the MWC does not state a claim for unjust enrichment because it fails to adequately plead that the Pac-12 "received and unjustly retained a benefit at [the MWC's] expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see Simila v. Am. Sterling Bank*, 2010 WL 11442911, at *8 (S.D. Cal. Apr. 27, 2010) (dismissing claim for failure to plead any benefit was "unjustly" retained). The MWC's allegations of an uncompensated "benefit" are ambiguous, but it appears to allege that, by virtue of playing the football games contemplated in the Scheduling Agreement, the Pac-12 unjustly benefited from "access" to MWC member schools. *See* CC ¶ 150 ("The MWC provided OSU and WSU . . . with six football games each."), ¶ 152 ("The ability for the Pac-12's universities to play football games against the MWC's universities . . . provided essential on-field and off-field access . . ."). This fails to state a claim for unjust enrichment because this "benefit" is exactly what the MWC bargained for when it sold the Pac-12 football games in exchange for millions of dollars per game. *See Tremblay v. OpenAI Inc.*, 716 F. Supp. 3d 772, 783 (N.D. Cal. 2024) (dismissing unjust enrichment claim for failure to plead that defendant obtained alleged benefit "through fraud, mistake, coercion, or request"); *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (similar). A party cannot plead a benefit was "unjust" where it was contractually obligated to provide that benefit, the counterparty performed under the contract, and the contract was not terminated. *See Wilshire Assocs., Inc. v. Ashland Partners & Co., LLP*, 2010 WL 11505571, at *31 (C.D. Cal. Sept. 7, 2010).

Here, the Pac-12 paid over $14 million for the games with MWC opponents that the MWC was **contractually obligated** to provide. The MWC's frustration with not receiving the Poaching Penalty on top of the (already exorbitant) fees the Pac-12 paid is insufficient to plead that any "access" to schools was an "unjust" benefit. *See id.* The MWC does not and cannot plead otherwise, so its claim fails as a matter of law.

### D. Amendment would be futile.

The Court should deny the MWC leave to amend because any amendment would be futile. Courts routinely deny leave to amend where, as here, the claims suffer from incurable legal defects. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (affirming district court's

15

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIMS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 5:24-cv-6685-SVK

3416553

1  denial of leave to amend based on futility); *Doe v. Garland*, 17 F.4th 941, 950 (9th Cir. 2021)

2  (affirming denial of leave to amend where party's argument was "foreclosed by caselaw"); *Smith*

3  *v. Cnty. of Santa Cruz*, 2018 WL 317846, at *5 (N.D. Cal. Jan. 8, 2018), *aff'd*, 731 F. App'x 682

4  (9th Cir. 2018) (dismissing without leave to amend where claim was "legally barred" and "[n]o

5  additional factual allegations c[ould] cure this defect"). The MWC has had more than a year since

6  this litigation began to plead its Counterclaims, yet its claims suffer from incurable legal defects.

7  The economic loss rule bars its fraud claim, and there are no facts the MWC could plead to clear

8  Rule 9(b)'s high bar of particularity. The at-will nature of the MWC's member agreements and

9  the absence of any independently wrongful conduct doom any tortious interference claim. And

10  the MWC cannot plead any set of facts that permit a recovery for unjust enrichment if the Court

11  finds the Poaching Penalty unlawful.

12  **V.    CONCLUSION**

13        For the foregoing reasons, the Court should dismiss Counts III, IV, and V of the MWC's

14  Counterclaims with prejudice.

15
16  Dated: December 5, 2025                         KEKER, VAN NEST & PETERS LLP

17
                                          By:    */s/ Eric H. MacMichael*
18                                               ERIC H. MACMICHAEL
19                                               NICHOLAS S. GOLDBERG
                                                 ANJALI SRINIVASAN
                                                 PAUL H. VON AUTENRIED
20                                               CHARLOTTE KAMAI

21                                               Attorneys for Plaintiff THE PAC-12
                                                 CONFERENCE
22

23

24

25

26

27

28

3416553