KEKER, VAN NEST & PETERS LLP
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
ANJALI SRINIVASAN - # 304413
asrinivasan@keker.com
FRANCO MUZZIO - # 310618
fmuzzio@keker.com
KELLY S. KAUFMAN - # 328827
kkaufman@keker.com
PAUL H. VON AUTENRIED - # 335917
pvonautenried@keker.com
CHARLOTTE KAMAI - # 344786
ckamai@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Plaintiff THE PAC-12
CONFERENCE

WILLKIE FARR & GALLAGHER LLP
Krista S. Schwartz (Bar No. 303604)
kschwartz@willkie.com
Alexander L. Cheney (Bar No. 302157)
acheney@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

WILLKIE FARR & GALLAGHER LLP
Wesley Powell (Bar No. 230430)
wpowell@willkie.com
787 Seventh Ave.
New York, NY 10019
Tel: (212) 728-8000

WILLKIE FARR & GALLAGHER LLP
Matt D. Basil (*Pro Hac Vice*)
mbasil@willkie.com
300 N. LaSalle Street
Chicago, IL 60654
Tel: (312) 728-9000

Attorneys for Defendant THE MOUNTAIN
WEST CONFERENCE

UNITED STATES DISTRICT COURT

DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE PAC-12 CONFERENCE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE MOUNTAIN WEST CONFERENCE,<br><br>　　　　　Defendant. | Case No. 5:24-cv-6685-SVK<br><br>**JOINT STATEMENT REGARDING PRODUCTION OF MEMBER MATERIALS**<br><br>Judge:　　Hon. Susan van Keulen<br><br>Date Filed: September 24, 2024<br><br>Trial Date: July 6, 2027 |

Plaintiff The Pac-12 Conference ("Pac-12") and Defendant The Mountain West Conference ("MWC") submit this Joint Statement pursuant to Paragraph 8 of the Court's Civil and Discovery Referral Matters Standing Order. The Pac-12 served its First Set of Requests for Production ("RFPs") on the MWC on November 20, 2025. During the parties' meet-and-confer, the Pac-12 explained that custodial ESI of senior officials at the MWC's member schools must be produced because those officials acted as MWC decisionmakers and agents. As a compromise, the Pac-12 requests an order directing both parties to collect, search, and produce responsive materials from presidents and athletic directors ("ADs"), of schools that were members of their respective conferences during both the 2024-2025 and 2025-2026 seasons, who acted on behalf of the conference (hereinafter "Member Materials"). *See* Ex. 1 (listing schools at issue). The MWC takes the position that Member Materials are not "within [the] conference's custody and control for purposes of discovery." The MWC proposes the parties could agree to accept service of third-party subpoenas on behalf of their respective Member Institutions, subject to those schools' agreements. Fact discovery will close on September 11, 2026, and trial will begin on July 6, 2027.

## I.     THE PAC-12'S POSITION

The Court should compel the MWC to collect, search, and produce Member Materials because they are highly relevant and within the MWC's control under Rule 34. The Pac-12 is prepared to do the same. The MWC's argument that it lacks "control"—when it is governed by and acts through member presidents (as its Board)—is meritless.

### A.     Member Materials are highly relevant.

The Pac-12 seeks Member Materials because MWC member presidents and ADs were involved in the conduct at issue in this case, and members have a direct stake in any recovery. The MWC's Bylaws[1] make clear that the MWC is governed by and acts through its members. Under

---

[1] *Available at* https://storage.googleapis.com/themw-com/2024/09/9e6b0e71-conference-bylaws.pdf.

Section 2.01, "the business and affairs of the [MWC] shall be managed under the direction of[] the Board of Directors." And Section 2.03 provides that the Board is composed of the president of each "Member Institution." Without members' input, the MWC could not function; its budget, regulations, and membership decisions all "[r]equir[e] Board Approval." *See id.* 2.16.

Because the MWC can act only at its members' direction, Member Materials are directly relevant to whether the MWC's conduct is unlawful. To enter the Scheduling Agreement, MWC member presidents—as the Board—voted on it. *See* MWC Bylaws 4.01(g) (requiring Board approval for all "significant contracts"). The MWC itself alleges that "the MWC ***and its members*** would not [have] enter[ed] into this Agreement . . . without [the Poaching Penalty]." Dkt. 50 ¶ 57 (emphasis added). Documents relating to the rationale of any Board member (the presidents) approving the Scheduling Agreement (including the Poaching Penalty) are relevant to the Pac-12's contract claim; they bear on whether the Poaching Penalty was a reasonable approximation of the damages that the members anticipated would flow from the loss of some-but-not-all members. Likewise, documents showing consideration of the Scheduling Agreement bear on what alternatives the MWC and its members contemplated and what goals the members had, all of which affects "reasonableness" under the antitrust laws. And the efforts of MWC presidents and ADs to recruit and retain members on behalf of their conference (*e.g.*, to compete with the Pac-12) bear on market definition, the MWC's market power, and the lack of any cognizable harm to the MWC.

The MWC has agreed to produce documents responsive to the Pac-12's RFPs on these issues, conceding their relevance. But refusing to collect the corresponding Member Materials of the very individuals who act on its behalf erects an impermissible, artificial wall to try to shield MWC members' documents from discovery. That artificial wall makes no sense in this case. To be clear, the MWC members negotiated and approved the Poaching Penalty and advocated for the MWC as a competitor to the Pac-12. Those actions are central to the parties' dispute, and the MWC cannot evade the production of critical documents by falsely suggesting it lacks "control" over

communications that members made on behalf of the conference.

**B.      The MWC has "control" over Member Materials.**

A party is required to produce documents in the possession of a nonparty if that party has a "legal right to obtain the document" or "control over the entity who is in possession of the document." *See Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995). "Actual possession of the requested documents is not required." *Id*. The control inquiry is inherently fact-specific. *See St. Jude Medical S.C., Inc. v. Janssen-Counette*, 305 F.R.D. 630, 638 (D. Or. 2015)

Member Materials are within the MWC's control for multiple reasons. Control "may be established by the existence of a principal-agent relationship." *See Allen v. Woodford*, 2007 WL 309945, at *2 (E.D. Cal. 2007). "Under established Ninth Circuit law, materials in the possession of an agent are within the 'control' of the responding person and must be produced." *See Jones v. PGA Tour, Inc.*, No. 5:22-CV-04486-BLF, Dkt. 160 at 2 (van Keulen, J.). If MWC members communicated with others regarding the Scheduling Agreement or the Pac-12, they did so on behalf of the MWC, with corresponding obligations to provide the MWC with information about their activities. *See* Restatement (Third) of Agency § 8.11 (2006) (agents have duty to "provide the principal with facts the agent knows [when] the agent knows or has reason to know that the principal would wish to have the facts"). Indeed, as discussed above, the MWC could not have entered into the Scheduling Agreement without its members' involvement and approval. It is simply "not credible" that the MWC is unable to obtain documents from the individuals who carry out its business. *See Jones*, No. 5:22-CV-04486, Dkt. 160 at 2.

During meet-and-confer, the MWC refused to confirm whether it has even asked its members to provide relevant communications. Presumably, the MWC never asked because it knows they would have no legitimate basis to withhold from the MWC documents that relate to the conference's ongoing business affairs and are central to this litigation. The MWC's members—and in particular the presidents that make up its Board—control all decisions to "initiate, defend

and settle litigation involving the [MWC]." *See* MWC Bylaws 2.16(f). Because the decision to litigate *this* case required the members' presidents' approval, the MWC has "control sufficient to require the . . . members to provide documents relevant to [this] lawsuit." *See, e.g.*, *National Council on Compensation Ins., Inc. v. American Int'l Group, Inc.*, 2007 WL 4365371, at *3-5 (N.D. Ill. 2007) (finding organization's governing document conferred Rule 34 control over members). MWC members would also reap the benefits of any recovery in this case, having been promised the proceeds under the MWC's Grant of Rights.[2] It would be manifestly unfair and "unacceptable to allow" the MWC to use its members to engage in anticompetitive conduct—and pledge that they will be the "ultimate beneficiar[ies]" of any award in the ensuing lawsuit—but simultaneously shield their officials' documents from discovery. *See Compagnie Franciase d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 35 (S.D.N.Y. 1984).

Finally, even if the MWC members were not the conference's agents or controlling this litigation, the closeness of the "relationship between the [MWC] and [its members who] hav[e] actual possession of the document(s)" establishes that Member Materials are within the MWC's control. *See, e.g., St. Jude*, 305 F.R.D. at 638 (citation omitted). The MWC shares officers with its members. All "elected officers of the Conference" are Board members, all of whom must be a "Chief Executive Officer of [their] Member Institution." *See* MWC Bylaws 2.03, 3.01, 3.02. The MWC cannot simultaneously "intermingl[e]" its officers with members but withhold those individuals' documents. *See, e.g., Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.*, 2006 WL 6534230, at *6-7 (C.D. Cal. 2006) (finding control). Even the MWC's own authority acknowledges the same principle. *See City of Seattle v. ZyLAB N. Am., LLC*, 2017 WL 4418636, at *7 (W.D. Wash. 2017) (denying motion to compel given promise to produce nonparty officers'

---

[2] *See* Chris Murray, *Inside the Grant of Media Rights Contract Mountain West Schools Have Signed*, Nevada Sports Network (Feb. 14, 2025), *available at* https://nevadasportsnet.com/news/reporters/inside-the-grant-of-media-rights-contract-mountain-west-schools-have-signed.

documents "in their capacity as [defendant's] officer").

Given MWC members' "undeniable" connection to this case, their communications on the MWC's behalf must be within the conference's control. *See Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130-32 (D. Del. 1986) (compelling discovery where non-party "develop[ed]" at-issue technology). To hold otherwise would elevate the MWC's form over function.

### C.     The MWC's position is untenable.

The MWC's caselaw is inapposite. *Citric Acid* and its progeny involved corporate subsidiaries' refusal to produce documents held by a **_parent_** or a fellow **_subsidiary_**, where each corporation was "autonomous."[3] To the extent any analogy to those cases is apt, this case involves the **_opposite_** situation: the MWC (principal) refuses to produce documents held by members (agents) who—pursuant to the MWC's Bylaws—do the conference's business.

As a factual matter, the MWC ignores the touchstone of its own cases: the right to obtain documents "upon demand." As already explained, the MWC has made no demand of its members, instead assuming the answer would be "no." If the MWC is permitted to resist basic discovery based on such speculation, the parties will be forced to engage in lengthy third-party subpoena practice with each of the member schools, which promises delay and inefficiency. The Court should reject the MWC's shell-game. *See, e.g.*, *Cato v. Avila*, 2012 WL 3637909, at *4 (E.D. Cal. 2012) (requiring "factual support" for inability to obtain documents claimed to be beyond control). For the same reason, the MWC's purported compromise of "accept[ing] service of [such] third-party subpoenas . . . **_subject to those schools' agreements_**" is illusory. Even if the schools agreed, the Pac-12 would be forced to litigate individual schools' objections, even though **_all_** schools' officials acted similarly on behalf of the MWC in the Member Materials. Moreover,

---

[3] *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (control over different subsidiary); *see, e.g., Seifi v. Mercedes-Benz U.S.A., LLC*, 2014 WL 7187111, at *2 (N.D. Cal. 2014) (control over parent); *ZyLAB*, 2017 WL 4418636, at *6 (same); *PlayUp, Inc. v. Mintas*, 2022 WL 4112243, at *2 (D. Nev. 2022) (same); *M.G. v. Bodum USA, Inc.*, 2020 WL 1667410, at *3 (N.D. Cal. 2020) (same).

the MWC's offer is disingenuous: if the MWC has authority to accept subpoenas on the schools' behalf, it evidently has "control" over the schools' communications made on its behalf.

Because the MWC acts through, pursues this litigation at the direction of, and is closely intertwined with its members, it has "control" over the Member Materials under Rule 34. The Court should order the MWC to collect, search, and produce them in response to the Pac-12's RFPs.

## II. THE MWC'S POSITION

### A. The Pac-12 Has Not Met Its Burden to Establish that the MWC Has Control Over Member Materials.

The Pac-12 "bears the burden of showing that the [MWC] has control over" the Member Materials. *In re NCAA Student-Athlete Name & Likeness Litig.*, 2012 WL 161240 at *2 (N.D. Cal. 2012). The Ninth Circuit defines "control" as "the legal right to obtain documents upon demand," and "proof of theoretical control is insufficient; a showing of actual control is required." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). If the possessing entity "can refuse to turn over such documents legally and without breaching a contract," a responding party "lacks control over them and cannot be compelled to produce them." *Pecover v. Elec. Arts, Inc.*, 2012 WL 12921302, at *2 (N.D. Cal. Apr. 9, 2012).

#### 1. The MWC Does Not Have a Legal Right to Obtain Documents From Its Member Institutions.

Courts "generally recognize the formal separateness of related companies" in discovery, requiring the requesting party "meet the heavy burden of showing that the party on whom the discovery was served has the legal right to obtain documents on demand from its affiliated company[.]" *PlayUp, Inc. v. Mintas*, 2022 WL 4112243, at *2 (D. Nev. June 30, 2022). Here, the MWC is a Colorado nonprofit corporation with a separate legal identity from its members. Members are sovereign state entities created by state and federal governments, governed by their own boards—not the MWC. 10 U.S.C §§ 9431, 9455; Cal. Duc. Code §§ 66600, 66010.4; Nev. Rev. Stat. Ann. § 396.020; N.M. Stat. Ann. §§ 21-7-1, 21-7-4; Wyo. Stat. Ann. §§ 21-17-101, 21-17-203. The MWC does not have the right to demand documents from its members under any contract provision, bylaw, or otherwise. *See generally* MWC Handbook. As in *Citric Acid*, the

Pac-12 fails to point to any "contract giving [the MWC] the right to compel [Member Institutions] to furnish it with documents[.]" *Citric Acid*, 191 F.3d at 1107 (affirming "legal control" test as the standard for a parent's obligation to produce documents in the possession and custody of its subsidiary); *see also City of Seattle v. ZyLAB N. Am., LLC*, 2017 WL 4418636, at *6 (W.D. Wash. Oct. 5, 2017) (finding "close relationship" insufficient). This absence is fatal to the Pac-12.

### 2. The Pac-12's New "Agency" Theory Fails.

Having abandoned its "practical ability" theory—which is foreclosed under Ninth Circuit law—the Pac-12 now presents a novel agency-law argument.[4] This argument fails for multiple reasons. First, no agency relationship exists between the MWC and its members. Agency requires that an agent act on behalf of the principal, subject to the principal's control and with the principal's consent. The Member Institutions are independent sovereign entities—state universities created by state charters and governed by their own boards, and a federal military academy—not agents of the MWC. They do not act "subject to" the MWC's control; they maintain their own governance, legal counsel, and institutional missions entirely independent of the MWC.

Second, even if an agency relationship existed, the duty to provide information runs from agent to principal—it does not confer a legal right to demand documents upon the principal. This distinction is critical. An agent may provide information voluntarily pursuant to a duty of loyalty, but that does not mean the principal can compel production of documents in the agent's possession. Under *Citric Acid*, control requires "the legal right to obtain documents upon demand"—not a theoretical duty that might prompt voluntary disclosure. 191 F.3d at 1107. University presidents who happen to serve on the MWC's Board are not "agents" of the MWC—they are fiduciaries of their own institutions who participate in MWC governance as a condition of membership.

### 3.     The Pac-12's Remaining Arguments Are Equally Unavailing.

The Pac-12 also argues that the MWC "never asked" its members to provide relevant communications, and the MWC's failure to do so proves that "they would have no legitimate basis to withhold." The MWC's decision not to make a futile request does not create legal control. If

---

[4] The Pac-12 materially changed its legal theory during this briefing period. In the meet-and-confer process and in its initial draft submission, the Pac-12 relied primarily on a "practical ability" theory of control. After receiving the MWC's response demonstrating that "practical ability" is insufficient under Ninth Circuit law, the Pac-12 abandoned that theory and pivoted to its agency-law argument.

anything, the Pac-12's argument proves the MWC's point: the MWC would have to ask, and the members could refuse—which is the very definition of lacking legal control.

The Pac-12 also argues that the MWC's Board "control[s] all decisions to 'initiate, defend and settle litigation.'" But Board approval over the MWC's litigation decisions does not create MWC control over the Board members' personal files which are controlled by their *own* employers. The Pac-12 conflates governance authority with document control.

### B. The Pac-12's "Compromise" Is Unworkable and Should Be Rejected.

The Pac-12's proposed "compromise is neither a compromise nor a workable standard. It is merely a restatement of the Pac-12's primary position dressed up as a concession and would create more problems than it purports to solve.

#### *1.  The Proposed Standard Is Vague and Invites Further Disputes.*

"Act[ing] on behalf of the conference" is a vague standard, and will only generate additional disputes. University presidents and athletic directors spend the vast majority of their time serving institutions, not conferences. Distinguishing between when an official acts "on behalf of" the MWC versus their institution will be nearly impossible. Rather than resolving the dispute, this standard will lead to a slew of disputes about for whom an official was acting at any given moment.

#### *2.  Compromise Imposes a Grossly Disproportionate Burden on the MWC.*

The Pac-12 is an unincorporated association with only two member schools; the MWC is a nonprofit corporation with seven member schools at issue—most of whom are state institutions beyond this Court's jurisdiction. Forcing the MWC to acquire documents from seven institutions—where the MWC has no legal right to obtain records—is grossly disproportionate compared to the Pac-12's obligation under its proposal. The Pac-12 would merely do what it is already arguably legally required to do as an unincorporated association, for only two schools as opposed to seven.

#### *3. Exclusion of Departing Members Undermines the Pac-12's Control Theory.*

The schools leaving the MWC for the Pac-12 remain MWC schools until July 2026, but the Pac-12's proposal excludes documents held by such schools—perhaps because those schools have sued the MWC. The fact that these departing members sued the MWC demonstrates that the MWC does not "control" them. Under the Pac-12's theory, there is no principled basis for the exclusion. The Pac-12 argues conferences "control" members through governance and relationships—none of

which disappear when a member files a lawsuit.[5]  The Pac-12's carve-out confirms the MWC's point: the MWC does not have legal control over its Member Institutions' documents.

### C.    The Pac-12's Cited Authority Is Distinguishable.

The Pac-12's agency theory fails, and its cited authority does not help its cause. *St. Jude Medical*, 305 F.R.D. at 638, involved a former employee's documents—a far closer relationship than between an athletic conference and sovereign state universities. And *St. Jude's* "fact-specific" inquiry invokes cuts against the Pac-12's position, as the facts here show the MWC has no contractual, ownership or agency relationship conferring document control.  The Pac-12's reliance on *Allen* is also misplaced.  2007 WL 309945, at *2.  There, "defendants [had] already produced documents" "establishing … possession, custody or control of some of the responsive documents." *Id.* at *3.  Here, the MWC has not already produced Member Materials. *Jones v. PGA Tour* fares no better.  No. 5:22-cv-04486-BLF, Dkt. 160.  In that case, documents held by golfers' literal agents, from whom golfers had legal right to get information, were ordered to be produced. *Id.* at 2.  Here, the MWC has no such legal right.

The Pac-12's remaining authorities are inapposite, as the cases either involve  (1) a parent-subsidiary relationship that grants control over the nonparty's documents, (2) a contractual or constructive right to obtain documents, or (3) an unincorporated association with no separate legal existence from its members.  *See Soto*, 162 F.R.D. at 620 (N.D. Cal. 1995) (defendant had contractual right to obtain psychiatric evaluations); *Thales Avionics Inc.*, 2006 WL 6534230, at *5 (C.D. Cal. 2006) (commonality of ownership); *Afros S.P.A.*, 113 F.R.D. at 130–31 (D. Del. 1986) (documents held by parent corporation); *Nat'l Council on Comp. Ins.*, 2007 WL 4365371, at *5 (finding control based on "degree of legal separation" of unincorporated association with no separate legal existence); *Cato*, 2012 WL 3637909, at *4 (E.D. Cal. 2012) (finding defendants employed by CDCR and/or the Attorney General can generally obtain documents by requesting them, thus giving them constructive control over the documents); *Stella Sys., LLC v. MedeAnalytics, Inc.*, 2015 WL 1870052, at *3 (N.D. Cal. Apr. 22, 2015) (requesting party failed to show plaintiff could obtain certain information from a third party).

---

[5] Departing MWC members join the Pac-12 in July 2026.  At that point, taking the Pac-12's argument to its logical conclusion, those institutions' documents would transfer from MWC "control" to Pac-12 "control."

In fact, the Pac-12's citation to *Stella Systems*, 2015 WL 1870052, supports MWC's position—not the Pac-12's—as the Court in that case declined to order production of the requested documents because the requesting party did not meet its burden to show that the plaintiff had the right to obtain the documents from a third party.

### F.  The MWC's Proposed Alternative.

If the Court is inclined to facilitate discovery from members, the MWC suggests a proposal contemplated by the Federal Rules of Civil Procedure: the parties could agree to accept service of third-party subpoenas on behalf of their respective members, subject to the agreement of those legally separate members.  This would eliminate the need to serve each individual member, while respecting that the MWC does not control documents held by its members.  Member Institutions would respond as third parties with Rule 45 protections, including objections for burden, privilege or relevance.  Unlike the Pac-12 proposal, this approach does not require a novel standard, does not impose asymmetric burdens, and does not force the MWC to produce documents it does not control.

The Pac-12 attacks this proposal as "disingenuous," arguing that "if the MWC has authority to accept subpoenas on the schools' behalf, it evidently has 'control' over the schools' communications."  This argument misconstrues the MWC' proposal.  The MWC proposes to facilitate service of subpoenas as a procedural convenience to streamline third-party discovery.  This is fundamentally different from having legal control over the documents sought.  The MWC's willingness to assist with service mechanics does not transform its relationship with its members into one of legal control.

\* \* \*

The MWC respectfully requests that the Court deny the Pac-12's motion.  The MWC is a distinct legal entity with no right to demand documents from its Member Institutions and the Pac-12's proposed "compromise" is unworkable.  The Court should deny the Pac-12's request.

| | | |
|---|---|---|
| Dated: March 10, 2026 | | KEKER, VAN NEST & PETERS LLP |
| | By: | */s/ Eric H. MacMichael* |
| | | Attorneys for Plaintiff THE PAC-12 CONFERENCE |
| Dated: March 10, 2026 | | WILLKIE FARR & GALLAGHER LLP |
| | By: | */s/ Krista S. Schwartz* |
| | | Attorneys for Defendant THE MOUNTAIN WEST CONFERENCE |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatory.

Dated: March 10, 2026                              /s/ Eric H. MacMichael