KEKER, VAN NEST & PETERS LLP
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
NICHOLAS S. GOLDBERG - # 273614
ngoldberg@keker.com
ANJALI SRINIVASAN - # 304413
asrinivasan@keker.com
FRANCO E. MUZZIO - # 310618
fmuzzio@keker.com
KELLY S. KAUFMAN - # 328827
kkaufman@keker.com
PAUL H. VON AUTENRIED - # 335917
pvonautenried@keker.com
CHARLOTTE KAMAI - # 344786
ckamai@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff and Counter-Defendant
THE PAC-12 CONFERENCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE PAC-12 CONFERENCE,<br><br>Plaintiff,<br><br>v.<br><br>THE MOUNTAIN WEST CONFERENCE,<br><br>Defendant. | Case No. 5:24-cv-6685-SVK<br><br>**PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS** |
| THE MOUNTAIN WEST CONFERENCE<br><br>Counter-Claimant,<br><br>v.<br><br>THE PAC-12 CONFERENCE,<br><br>Counter-Defendant. | Dept.:      Courtroom 6 – 4th Floor<br>Judge:      Hon. Susan van Keulen<br><br>Date Filed: September 24, 2024<br>Trial Date: July 6, 2027 |

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO
THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

Plaintiff and Counter-Defendant THE PAC-12 CONFERENCE ("the Pac-12"), by and through its attorneys, answers the Counterclaims filed by Defendant and Counter-Claimant THE MOUNTAIN WEST CONFERENCE ("the MWC").

Except as expressly admitted herein, Pac-12 denies the allegations in the Counterclaims. Any admission herein is limited to the express language of the response and shall not be deemed an implied admission of additional facts.

## RESPONSES TO NUMBERED PARAGRAPHS OF COUNTERCLAIMS

The Pac-12 responds to the numbered paragraphs of Defendant and Counter-Claimant the MWC's Counterclaims as follows:

## THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS

### I.   INTRODUCTION

1. The Pac-12 admits that the MWC and the Pac-12 reached a Scheduling Agreement in late 2023, which became effective December 1, 2023. The Pac-12 denies any remaining allegations in Paragraph 1.

2. The Pac-12 admits that the NCAA's bylaws generally require that a conference have a minimum of eight active member schools to participate in the FBS. The Pac-12 further admits that after the University of California, Los Angeles (UCLA), the University of Southern California (USC), the University of Oregon, the University of Washington, the University of Colorado, the University of Arizona, Arizona State University, the University of Utah, the University of California, Berkeley, and Stanford University (collectively, "Departed Pac-12 Schools") announced their departure from the Pac-12 to join competing conferences beginning with the 2024-2025 academic year, the Pac-12 had limited time to recruit new members and maintain its FBS status. The Pac-12 denies any remaining allegations in Paragraph 2.

3. The Pac-12 admits that Section 7.01 and Schedule 7 of the Scheduling Agreement contain "Termination Fees" provisions. The Pac-12 further admits that the Termination Fees state that if any MWC school accepts an offer from the Pac-12 to join the Pac-12 conference, the Pac-12 "shall pay liquidated damages to MWC in the form of [a] termination fee." The Pac-12 denies any remaining allegations in Paragraph 3.

1

6122488

4.      The Pac-12 admits that the Termination Fees are one-sided penalties that punish the Pac-12 if it recruits some (but not all) MWC member schools to join the Pac-12.  The Pac-12 further admits that the Termination Fees extend two years after the Scheduling Agreement's expiration date.  The Pac-12 further states that the Termination Fees were intended to insulate the MWC from competition by the Pac-12 and weaken the Pac-12 as a competitor and thereby act as an unreasonable and unlawful restraint on competition.  The Pac-12 denies any remaining allegations in Paragraph 4.

5.      The Pac-12 admits that it is challenging the lawfulness of the Termination Fees. The Pac-12 denies any remaining allegations in Paragraph 5.

6.      The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

7.      The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

## II.      PARTIES

8.      The Pac-12 admits the allegations in Paragraph 8.

9.      The Pac-12 admits the allegations in Paragraph 9.

10.     The Pac-12 admits the allegations in Paragraph 10.

## III.      JURISDICTION AND VENUE

11.     Solely for the purpose of this action, the Pac-12 does not contest subject matter jurisdiction, personal jurisdiction in this District, or that venue is proper in the San Jose Division.

12.     Solely for the purpose of this action, the Pac-12 does not contest subject matter jurisdiction, personal jurisdiction in this District, or that venue is proper in the San Jose Division.

13.     Solely for the purpose of this action, the Pac-12 does not contest subject matter jurisdiction, personal jurisdiction in this District, or that venue is proper in the San Jose Division.

## IV.      FACTUAL ALLEGATIONS

### A.      The Mountain West Conference

14.     The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

6122488

15.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

16.    The Pac-12 admits the allegations in Paragraph 16.

17.    The Pac-12 admits that on September 11, 2024, after receipt and review of formal written applications for admission from Boise State University, California State University, Fresno, Colorado State University, and San Diego State University, the Pac-12 admitted the four schools as Pac-12 members beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 further admits that on September 23, 2024, after receipt and review of a formal written application for admission from Utah State University, the Pac-12 admitted Utah State University as a Pac-12 member beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 denies any remaining allegations in Paragraph 17.

**B.    The Pac-12 Conference**

18.    The Pac-12 admits the allegations in Paragraph 18.

19.    The Pac-12 admits that for the 2024-2025 season, the Pac-12 consisted of Oregon State University ("OSU") and Washington State University ("WSU").  The Pac-12 further admits that on September 11, 2024, after receipt and review of formal written applications for admission from Boise State University, California State University, Fresno, Colorado State University, and San Diego State University, the Pac-12 admitted the four schools as Pac-12 members beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 further admits that on September 23, 2024, after receipt and review of a formal written application for admission from Utah State University, the Pac-12 admitted Utah State University as a Pac-12 member beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 denies any remaining allegations in Paragraph 19.

**C.    Realignment of the Pac-12**

20.    The Pac-12 admits that competition among collegiate athletics conferences to recruit schools to become members is robust.  The Pac-12 denies any remaining allegations in Paragraph 20.

6122488

21. The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

22. The Pac-12 admits that the article cited at Footnotes 28 and 29 states that then-Pac-12 Commissioner George Kliavkoff "received word from Big 12 commissioner Bob Bowlsby that the eight [Big-12 schools] were interested in coming to the Pac-12 to make a Pac-12, playing games across every time zone." The Pac-12 further admits that it did not accept the proposal. The Pac-12 denies any remaining allegations in Paragraph 22.

23. The Pac-12 denies the allegations in Paragraph 23.

24. The Pac-12 admits that in June 2022, UCLA and USC announced that they would depart the Pac-12 at the conclusion of the 2023-2024 academic year. The Pac-12 denies any remaining allegations in Paragraph 24.

25. The Pac-12 admits that after the announcement of USC's and UCLA's departures, it considered agreements with other conferences. The Pac-12 denies any remaining allegations in Paragraph 25.

26. The Pac-12 admits that between July 2023 and September 2023, the Departed Pac-12 Schools agreed to join other conferences beginning with the 2024-2025 academic year, as part of competition among conferences for member schools. The Pac-12 denies any remaining allegations in Paragraph 26.

27. The Pac-12 admits the allegations in Paragraph 27.

28. The Pac-12 admits that OSU and WSU initiated litigation on or about September 8, 2023, captioned *Washington State University and Oregon State University v. The Pac-12 Conference*, No. 23-2-00273-38 (Whitman County Super. Ct.). The Pac-12 denies any remaining allegations in Paragraph 28.

29. The Pac-12 admits that on or about November 14, 2023, OSU and WSU obtained a preliminary injunction in the case captioned *Washington State University and Oregon State University v. The Pac-12 Conference*, No. 23-2-00273-38 (Whitman County Super. Ct.). The Pac-12 denies any remaining allegations in Paragraph 29.

6122488

30.    The Pac-12 admits that OSU and WSU reached a settlement with the Pac-12 and the Departed Pac-12 Schools regarding the case captioned *Washington State University and Oregon State University v. The Pac-12 Conference*, No. 23-2-00273-38 (Whitman County Super. Ct.).  The Pac-12 further states that the terms of its agreement with the Departed Pac-12 Schools are reflected in that settlement agreement.  The Pac-12 denies any remaining allegations in Paragraph 30.

**D.    The Pac-12, OSU, WSU, and Mountain West Strike a Mutually Beneficial Bargain**

31.    The Pac-12 admits that in the fall of 2023, the Pac-12 and its two remaining schools, OSU and WSU, faced the prospect of a 2024-2025 season without a full schedule of football games for their student athletes and limited time to recruit new members and remain eligible to participate as a conference in the FBS.  The Pac-12 denies any remaining allegations in Paragraph 31.

32.    The Pac-12 admits that in the fall of 2023, the Pac-12 and its two remaining schools, OSU and WSU, faced the prospect of a 2024-2025 season without a full schedule of football games for their student athletes and limited time to recruit new members and remain eligible to participate as a conference in the FBS.  The Pac-12 denies any remaining allegations in Paragraph 32.

33.    The Pac-12 admits that the NCAA's bylaws afforded a two-year grace period, beginning with the 2024-2025 season, for the Pac-12 to participate in the FBS without the requisite eight active member schools.  The Pac-12 further admits that in the fall of 2023, the Pac-12 and its two remaining schools, OSU and WSU, had limited time to recruit new members and remain eligible to participate as a conference in the FBS.  The Pac-12 denies any remaining allegations in Paragraph 33.

34.    The Pac-12 admits that the Scheduling Agreement provided dates and matchups for OSU and WSU to compete against MWC schools in football for the 2024-2025 season.  The Pac-12 denies any remaining allegations in Paragraph 34.

35.    The Pac-12 admits that following the departure of the Departed Pac-12 Schools, and with only months until the 2024-2025 season was set to begin, the Pac-12 and its remaining

5

6122488

members, OSU and WSU, began exploring scheduling options for the 2024-2025 football season. The Pac-12 denies any remaining allegations in Paragraph 35.

36. The Pac-12 admits that following the departure of the Departed Pac-12 Schools, and with only months until the 2024-2025 season was set to begin and the football transfer window was set to open, the Pac-12 and its remaining members, OSU and WSU, began exploring scheduling options for the 2024-2025 football season. The Pac-12 further admits that in the negotiation of the Scheduling Agreement, both the Pac-12 and MWC had counsel. The Pac-12 further admits that because the MWC knew that the Pac-12 was running out of time and short on leverage, the MWC forced the Pac-12 to accept the Termination Fees provisions of the Scheduling Agreement. The Pac-12 denies any remaining allegations in Paragraph 36.

37. The Pac-12 admits that it obtained the approval of the Departed Pac-12 Schools to enter the Scheduling Agreement. The Pac-12 denies any remaining allegations in Paragraph 37.

38. The Pac-12 admits that in the negotiation of the Scheduling Agreement, both the Pac-12 and MWC had counsel. The Pac-12 further admits that because the MWC knew that the Pac-12 was running out of time and short on leverage, the MWC forced the Pac-12 to accept the Termination Fees provisions of the Scheduling Agreement. The Pac-12 denies any remaining allegations in Paragraph 38.

39. The Pac-12 admits that it objected to the inclusion of the Termination Fees provisions of the Scheduling Agreement. The Pac-12 further admits that the MWC insisted on the inclusion of Termination Fees over the Pac-12's objection. The Pac-12 denies any remaining allegations in Paragraph 39.

40. The Pac-12 denies the allegations in Paragraph 40.

41. The Pac-12 admits that it objected to the inclusion of the Termination Fees provisions of the Scheduling Agreement. The Pac-12 further admits that the MWC insisted on the inclusion of Termination Fees over the Pac-12's objection. The Pac-12 denies any remaining allegations in Paragraph 41.

42. The Pac-12 admits that under the Scheduling Agreement, OSU and WSU would each participate in six football games against MWC opponents during the 2024-2025 season. The

6122488

Pac-12 further admits that under the Scheduling Agreement, the MWC received more than $14 million in compensation from Pac-12 member schools, which far exceeded the market value of integrating OSU and WSU into the MWC's schedule.  The Pac-12 denies any remaining allegations in Paragraph 42.

43.    The Pac-12 admits that the article cited in Footnote 45 contains the stated quotations.  The Pac-12 denies any remaining allegations in Paragraph 43.

44.    The Pac-12 admits that it reached an agreement with the MWC to provide dates and matchups for OSU and WSU to compete against MWC schools in football for the 2024-2025 season.  The Pac-12 further admits that under the Scheduling Agreement, the MWC received more than $14 million in compensation from Pac-12 member schools for one season of football games.  The Pac-12 further admits that the Scheduling Agreement contemplated renewal for the 2025-2026 season but in no way required that the parties agree to renew.  The Pac-12 further states that the parties were unable to reach an agreement regarding renewal, so OSU and WSU made alternative arrangements for a 2026-2027 football schedule.  The Pac-12 further states that the MWC still purported to impose the unlawful Termination Fees on the Pac-12 in September 2024, even though OSU and WSU were no longer playing games with MWC schools under the Scheduling Agreement.  The Pac-12 denies any remaining allegations in Paragraph 44.

**E.    The Termination Fees Agreed Upon By the Parties Serve Critical, Procompetitive Functions**

45.    The Pac-12 admits that the Scheduling Agreement includes the stated provision. The Pac-12 further admits that Section 7.01 and Schedule 7 of the Scheduling Agreement constitute a one-sided Poaching Penalty that punishes the Pac-12 if it recruits some (but not all) MWC member schools to join the Pac-12.  The Pac-12 further states that there is no similar provision or penalty if the MWC successfully recruits a Pac-12 school.  The Pac-12 denies any remaining allegations in Paragraph 45.

46.    The Pac-12 admits that the Scheduling Agreement includes the stated Schedule 7. The Pac-12 further admits that Section 7.01 and Schedule 7 of the Scheduling Agreement constitute a one-sided Poaching Penalty that punishes the Pac-12 if it recruits some (but not all)

7

6122488

MWC member schools to join the Pac-12. The Pac-12 further states that there is no similar provision or penalty if the MWC successfully recruits a Pac-12 school. The Pac-12 denies any remaining allegations in Paragraph 46.

47. The Pac-12 admits that the Scheduling Agreement includes the stated provision. The Pac-12 further admits that Section 7.01 and Schedule 7 of the Scheduling Agreement constitute a one-sided Poaching Penalty that punishes the Pac-12 if it recruits some (but not all) MWC member schools to join the Pac-12. The Pac-12 further states that there is no similar provision or penalty if the MWC successfully recruits a Pac-12 school. The Pac-12 further states that the MWC's stated rationale in Section 7.02 for the Poaching Penalty is pretextual and disingenuous because the Poaching Penalty is duplicative of exit fees the MWC already sought to collect from its departing members and bears no rational relationship to the loss that the MWC would incur from the loss of a member school. The Pac-12 denies any remaining allegations in Paragraph 47.

48. The Pac-12 admits that it objected to the inclusion of the Termination Fees provisions of the Scheduling Agreement. The Pac-12 further admits that the MWC insisted on the inclusion of Termination Fees over the Pac-12's objection. The Pac-12 denies any remaining allegations in Paragraph 48.

49. The Pac-12 admits that departures of member schools can create gaps in the schedules of a collegiate athletics conference's remaining schools. The Pac-12 denies any remaining allegations in Paragraph 49.

50. The Pac-12 admits that competition among collegiate athletics conferences to recruit schools to become members is robust. The Pac-12 further states that the MWC intended the Termination Fees to insulate the MWC from competition by the Pac-123 and weaken the Pac-12 as a competitor. The Pac-12 denies any remaining allegations in Paragraph 50.

51. The Pac-12 admits that the Scheduling Agreement provides that the two conferences will "negotiate in good faith" regarding the possibility of a "definitive transaction" between the Pac-12 and the MWC. The Pac-12 further states that the Scheduling Agreement does not contain any commitment to actually enter into a definitive transaction, nor identify any terms

8

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

that would be relevant to reaching such an agreement, and the agreement to negotiate in good faith regarding a definitive transaction was not a primary purpose of or material inducement for entering the Scheduling Agreement.  The Pac-12 denies any remaining allegations in Paragraph 51.

52.    The Pac-12 admits that the Termination Fees are severe monetary penalties that were designed to insulate the MWC from competition by the Pac-12 and weaken the Pac-12 as a competitor.  The Pac-12 further admits that the Termination Fees improperly restrict and limit the competitive offers the Pac-12 can make to MWC members because it places an exorbitant tax on such officers.  The Pac-12 further admits that the MWC insisted on including the Termination Fees to prevent the Pac-12 from recruiting MWC member schools to join the Pac-12 in future seasons. The Pac-12 denies any remaining allegations in Paragraph 52.

53.    The Pac-12 admits that the MWC agreed that any payments under Sections 7.01 and 7.02 are the MWC's sole and exclusive remedy, if at all.  The Pac-12 denies any remaining allegations in Paragraph 53.

54.    The Pac-12 denies the allegations in Paragraph 54.

55.    The Pac-12 admits that the NCAA's bylaws generally require that a conference have a minimum of eight active member schools to participate in the FBS.  The Pac-12 denies any remaining allegations in Paragraph 55.

56.    The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

57.    The Pac-12 admits that the Scheduling Agreement contains the stated quotation. The Pac-12 further states that the purported justifications for the Termination Fees set forth in the Scheduling Agreement by the MWC are pretextual, illusory, and designed by the MWC solely to conceal its anticompetitive purpose.  The Pac-12 denies any remaining allegations in Paragraph 57.

58.    The Pac-12 denies the allegations in Paragraph 58.

59.    The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO
THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

**F.    The Parties Fail to Schedule Games for the 2025–2026 season, and the Pac-12 Raids the MWC, Refusing to Pay the Termination Fees.**

60.    The Pac-12 admits that the Scheduling Agreement contemplated a potential renewal for the 2025-2026 season, to provide a second year of football games at an undetermined price, but in no way required that the parties agree to renew.  The Pac-12 further admits that the conferences discussed the possibility of a renewal but were unable to reach an agreement after the MWC demanded $30 million from the Pac-12, over double the already-above-market price it charged the Pac-12 for the 2024-2025 season.  The Pac-12 further admits that the Scheduling Agreement provides that the two conferences will "negotiate in good faith" regarding the possibility of a "definitive transaction" between the Pac-12 and the MWC.  The Pac-12 further states that the Scheduling Agreement does not contain any commitment to actually enter into a definitive transaction, nor identify any terms that would be relevant to reaching such an agreement, and the agreement to negotiate in good faith regarding a definitive transaction was not a primary purpose of or material inducement for entering the Scheduling Agreement.  The Pac-12 denies any remaining allegations in Paragraph 60.

61.    The Pac-12 admits that the conferences discussed the possibility of renewing the Scheduling Agreement for the 2026-2027 season.  The Pac-12 further admits that the conferences were unable to reach an agreement after the MWC demanded $30 million from the Pac-12, over double the already-above-market price it charged the Pac-12 for the 2024-2025 season.  The Pac-12 denies any remaining allegations in Paragraph 61.

62.    The Pac-12 admits that in a July 22, 2024 letter, MWC Commissioner Gloria Nevarez "propos[ed] that a fee of $15 million per school and $30 million in the aggregate be paid to the [MWC] for the 2025-2026 season."  The Pac-12 denies any remaining allegations in Paragraph 62.

63.    The Pac-12 admits that in an August 19, 2024 letter, Pac-12 Commissioner Teresa Gould stated that the Pac-12 was "proposing the same football scheduling agreement as the 2024 schedule which the parties spent months negotiating" and that "[i]n parallel," the Pac-12 "would like to begin [confidential] discussions with the MWC regarding a possible transaction under

10

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

which all MWC member institutions would join the Pac-12 as Pac-12 member institutions." The Pac-12 denies any remaining allegations in Paragraph 63.

64. The Pac-12 denies the allegations in Paragraph 64 and Footnote 51.

65. The Pac-12 admits that in an August 27, 2024 letter, MWC Commissioner Gloria Nevarez made a "$27 million counteroffer" to the Pac-12. The Pac-12 denies any remaining allegations in Paragraph 65.

66. The Pac-12 admits that in an August 30, 2024 letter, Pac-12 Commissioner Teresa Gould stated that the Pac-12 was "continuing to evaluate . . . [the MWC's] August 27th football scheduling proposal" and proposed dates and times for "reverse merger discussions." The Pac-12 denies any remaining allegations in Paragraph 66.

67. Admit that in a September 3, 2024 letter, MWC Commissioner Gloria Nevarez stated that "The [MWC] has determined that since the Pac-12 and the [MWC] have not reached an agreement to extend the Outside Date under the Scheduling Agreement by the deadline set forth therein, the term of the Scheduling Agreement will expire on August 1, 2025" and that the MWC "look[s] forward to proceeding with negotiating a potential transaction to have the conferences join together as one conference." The Pac-12 denies any remaining allegations in Paragraph 67.

68. The Pac-12 admits that the Pac-12 and MWC had preliminary discussions regarding a "definitive transaction," but neither conference made a proposal for a "definitive transaction," and the conferences have not entered into any such "definitive transaction." The Pac-12 denies any remaining allegations in Paragraph 68.

69. The Pac-12 admits that the article in Footnote 54 contains the stated quotations. The Pac-12 denies any remaining allegations in Paragraph 69.

70. The Pac-12 admits that on September 11, 2024, after receipt and review of formal written applications for admission from Boise State University, California State University, Fresno, Colorado State University, and San Diego State University, the Pac-12 admitted the four schools as Pac-12 members beginning on July 1, 2026 (the start of the 2026-2027 season). The Pac-12 denies any remaining allegations in Paragraph 70.

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO
THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

71.     The Pac-12 admits that on September 12, 2024, the MWC demanded the Pac-12 pay $43 million pursuant to the Termination Fees in a letter from MWC Commissioner Gloria Nevarez.  The Pac-12 denies any remaining allegations in Paragraph 71.

72.     The Pac-12 admits that on September 23, 2024, after receipt and review of a formal written application for admission from Utah State University, the Pac-12 admitted Utah State University as a Pac-12 member beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 further admits that the MWC then demanded the Pac-12 pay $55 million pursuant to the Termination Fees in a letter from MWC Commissioner Gloria Nevarez.  The Pac-12 denies any remaining allegations in Paragraph 72.

73.     The Pac-12 admits that it filed suit in this case on September 24, 2024.  The Pac-12 denies any remaining allegations in Paragraph 73.

74.     The Pac-12 denies the allegations in Paragraph 74.

75.     The Pac-12 admits that the Pac-12 paid distributions of $46,611,416 and $46,574,886 to OSU and WSU, respectively, for Fiscal Year 2024.  The Pac-12 denies any remaining allegations in Paragraph 75.

76.     The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

77.     The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

78.     The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

79.     The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

80.     The Pac-12 admits that Sections 7.01 and 7.02 of the Scheduling Agreement put an exorbitant tax on the Pac-12's recruitment of MWC member schools and therefore stifles competition for member schools.  The Pac-12 denies any remaining allegations in Paragraph 80.

81.     The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

12

6122488

82.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

83.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

84.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

**G.    The Pac-12's Covert Interference is Exposed**

85.    The Pac-12 admits that on September 11, 2024, after receipt and review of formal written applications for admission from Boise State University, California State University, Fresno, Colorado State University, and San Diego State University, the Pac-12 admitted the four schools as Pac-12 members beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 denies any remaining allegations in Paragraph 85.

86.    The Pac-12 admits that on September 23, 2024, after receipt and review of a formal written application for admission from Utah State University, the Pac-12 admitted Utah State University as a Pac-12 member beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 denies any remaining allegations in Paragraph 86.

87.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

88.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

89.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

90.    The Pac-12 denies the allegations in Paragraph 90.

91.    The Pac-12 admits that Utah State University President Elizabeth Cantwell attended a MWC board meeting on September 17, 2024.  The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of any remaining allegations in this paragraph and on that basis denies them.

13

6122488

92.     The Pac-12 admits that Boise State University, California State University, Fresno, Colorado State University, and San Diego State University signed a term sheet with the Pac-12 dated September 11, 2024.  The Pac-12 denies any remaining allegations in Paragraph 92.

93.     The Pac-12 admits that Utah State University signed a term sheet with the Pac-12 dated September 23, 2024.  The Pac-12 denies any remaining allegations in Paragraph 93.

94.     The Pac-12 admits that Boise State University, California State University, Fresno, Colorado State University, San Diego State University, and Utah State University may not withdraw from the Pac-12 during the term of the current Grant of Rights Agreement unless the school is withdrawing to join an A4 conference and meets procedural requirements.  The Pac-12 further admits that Boise State University, California State University, Fresno, Colorado State University, San Diego University, and Utah State University each agreed to pay $40 million to the Pac-12 if the school does not actually become a member of the Pac-12 beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 denies any remaining allegations in Paragraph 94.

95.     The Pac-12 denies the allegations in Paragraph 95.

96.     The Pac-12 denies the allegations in Paragraph 96.  The Pac-12 further states that Boise State University, California State University, Fresno, Colorado State University, San Diego State University, and Utah State University are not members of the Pac-12 until they formally join the conference beginning on July 1, 2026 (the start of the 2026-2027 season).  The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of any remaining allegations in this paragraph and on that basis denies them.

97.     The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

98.     The Pac-12 admits that Boise State University, Colorado State University, and Utah State University filed the Colorado lawsuit captioned in Footnote 73.  The Pac-12 further states that it is not a party to the Colorado lawsuit.  The Pac-12 denies any remaining allegations in Paragraph 98.

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

99.    Allegations in this paragraph describe a photo that is included in the Complaint, so no response is required.  To the extent that a response is required, the Pac-12 denies the allegations that set forth the description.  The Pac-12 denies any remaining allegations in Paragraph 99.

100.    The Pac-12 denies the allegations in Paragraph 100.

101.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

102.    No response is required.  To the extent a response is required, the Pac-12 denies and incorporates by reference each of the responses in the preceding paragraphs.

103.    The Pac-12 admits the allegations in Paragraph 103.

104.    The Pac-12 admits that a dispute exists over whether the Termination Fees provisions of the Scheduling Agreement are unlawful and/or unenforceable under Section 1 of the Sherman Act and the Cartwright Act.  The Pac-12 further admits that a valid case or controversy exists sufficient for this Court to declare the Termination Fees unlawful and unenforceable under Section 1 of the Sherman Act and the Cartwright Act.  The Pac-12 further states that the Termination Fees constitute a horizontal agreement between direct competitors in restraint of trade because they suppress competition, and as a direct and proximate result of the Termination Fees, the Pac-12 has and will continue to suffer competitive harm because of the inability to freely compete with other conferences for schools.  The Pac-12 denies any remaining allegations in Paragraph 104.

105.    The Pac-12 admits that a dispute exists over whether the Termination Fees provisions of the Scheduling Agreement are an unfair and/or unlawful business practice in violation of the UCL.  The Pac-12 further admits that a valid case or controversy exists sufficient for this Court to declare the Termination Fees an unfair and unlawful business practice in violation of the UCL.  The Pac-12 further states that the MWC's actions to suppress competition through the Termination Fees constitute unfair competition and unfair and unlawful business acts and practices in violation of the UCL.  The Pac-12 further states that the Termination Fees, whether or

6122488

not in violation of the Sherman Act or Cartwright Act, otherwise violates the UCL as an unfair business practice. The Pac-12 further states that as a direct and proximate result of the Termination Fees, the Pac-12 has and will continue to suffer competitive harm because of the inability to freely compete with other conferences for schools, and unless the Termination Fees are declared invalid and unenforceable, the Pac-12 will be inhibited from engaging in free competition and will be weakened as a competitor. The Pac-12 denies any remaining allegations in Paragraph 105.

106.    The Pac-12 admits that a dispute exists over whether the Termination Fees provisions of the Scheduling Agreement constitute an unenforceable liquidated damages penalty. The Pac-12 further admits that a valid case or controversy exists sufficient for this Court to declare the Termination Fees unenforceable liquidated damages penalties. The Pac-12 further states that the Termination Fees are unenforceable penalties because the only "losses" the Scheduling Agreement identifies as justifying the "termination fees"—loss of member schools and failing to consummate a "definitive transaction"—bear no reasonable relationship to the fees due under the Termination Fees provisions, which range from $10 million to $137.5 million. The Pac-12 denies any remaining allegations in Paragraph 106.

107.    The Pac-12 admits that the MWC seeks the stated relief but denies that the MWC is entitled to any such relief.

## COUNT II

### (Breach of Contract)

108.    No response is required. To the extent a response is required, the Pac-12 denies and incorporates by reference each of the responses in the preceding paragraphs.

109.    The Pac-12 admits that Section 7.01 of the Scheduling Agreement includes the stated quotation.

110.    The Pac-12 admits the allegation in Paragraph 110.

111.    The Pac-12 admits that on September 11, 2024, after receipt and review of formal written applications for admission from Boise State University, California State University, Fresno, Colorado State University, and San Diego State University, the Pac-12 admitted the four schools as Pac-12 members beginning on July 1, 2026 (the start of the 2026-2027 season). The

16

6122488

Pac-12 further admits that on September 23, 2024, after receipt and review of a formal written application for admission from Utah State University, the Pac-12 admitted Utah State University as a Pac-12 member beginning on July 1, 2026 (the start of the 2026-2027 season). The Pac-12 denies any remaining allegations in Paragraph 111.

112. The Pac-12 admits that Schedule 7 of the Scheduling Agreement provides for Termination Fees as stated. The Pac-12 further states that the Termination Fees set forth therein are unlawful and unenforceable. The Pac-12 denies any remaining allegations in Paragraph 112.

113. The Pac-12 admits that Section 7.02 of the Scheduling Agreement provides for a 30-day timeframe. The Pac-12 further admits that it has not paid Termination Fees. The Pac-12 further admits that the MWC demanded the Pac-12 pay $55 million pursuant to the Termination Fees. The Pac-12 further states that the $55 million penalty the MWC demanded is unlawful and unenforceable. The Pac-12 denies any remaining allegations in Paragraph 113.

114. The allegations in this paragraph state legal conclusions to which no response is required. To the extent a response is required, the Pac-12 denies.

115. The Pac-12 admits that Section 7.02 of the Scheduling Agreement includes the stated quotation.

116. The allegations in this paragraph state legal conclusions to which no response is required. To the extent a response is required, the Pac-12 denies. The Pac-12 further states that the Termination Fees are unlawful and unenforceable.

117. The Pac-12 denies the allegations in Paragraph 117.

118. The Pac-12 admits that Section 8.01 of the Scheduling Agreement includes the stated quotation.

119. The Pac-12 denies the allegations in Paragraph 119.

120. The Pac-12 denies the allegations in Paragraph 120.

121. The allegations in this paragraph state legal conclusions to which no response is required. To the extent a response is required, the Pac-12 denies.

6122488

## COUNT III

### (Promissory Fraud)

122. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

123. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

124. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

125. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

126. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

127. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

128. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

129. The Court dismissed Count III with prejudice, *see* Dkt. 69. Accordingly, no response is required.

## COUNT IV

### (Tortious Interference With Contractual Relations)

130. No response is required. To the extent a response is required, the Pac-12 denies and incorporates by reference each of the responses in the preceding paragraphs.

131. The Pac-12 denies the allegations in Paragraph 131.

132. The Pac-12 admits that as of the date of this filing, the MWC Handbook appears to be publicly available on the MWC's website. The remaining allegations in this paragraph are either legal conclusions to which no response is required or statements about which the Pac-12 lacks sufficient knowledge or information to form a belief as to their truth and on that basis denies them. To the extent a response is required, the Pac-12 denies.

6122488

133.    The Pac-12 admits that a "Conflict of Interest" policy is contained in Appendix K of the publicly available MWC Handbook.  The remaining allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

134.    The Pac-12 admits that publicly available MWC Bylaw 1.04 contains an exit fee provision.  The remaining allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

135.    The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

136.    The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

137.    The Pac-12 admits that it offered to contribute to the exit fees that the MWC sought from Boise State University, California State University, Fresno, Colorado State University, San Diego State University, and Utah State University.  The Pac-12 further admits that as of the date of this filing, the MWC Handbook appears to be publicly available on the MWC's website.  The Pac-12 denies any remaining allegations in Paragraph 137.

138.    The Pac-12 admits that the Letters contain the stated quotations.  The Pac-12 denies any remaining allegations in Paragraph 138.

139.    The Pac-12 denies the allegations in Paragraph 139.

140.    The Pac-12 denies the allegations in Paragraph 140.

141.    The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

142.    The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

143.    The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, the Pac-12 denies.

144.    The Pac-12 admits that on September 11, 2024, after receipt and review of formal written applications for admission from Boise State University, California State University,

19

6122488

Fresno, Colorado State University, and San Diego State University, the Pac-12 admitted the four schools as Pac-12 members beginning on July 1, 2026 (the start of the 2026-2027 season). The Pac-12 further admits that on September 23, 2024, after receipt and review of a formal written application for admission from Utah State University, the Pac-12 admitted Utah State University as a Pac-12 member beginning on July 1, 2026 (the start of the 2026-2027 season). The Pac-12 further admits that Boise State University, Colorado State University, and Utah State University filed the Colorado lawsuit captioned in Footnote 73. The Pac-12 further states that the it is not a party to the Colorado lawsuit. The Pac-12 denies any remaining allegations in Paragraph 144.

145. The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

146. The Pac-12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

147. The Pac-12 admits that the MWC seeks the stated relief but denies that the MWC is entitled to any such relief. The Pac-12 denies any remaining allegations in Paragraph 147.

**COUNT V (Pled in the Alternative)**

**(Quasi-Contract/Unjust Enrichment)**

148. No response is required. To the extent a response is required, the Pac-12 denies and incorporates by reference each of the responses in the preceding paragraphs.

149. The Pac-12 admits that the MWC seeks the stated relief but denies that the MWC is entitled to any such relief.

150. The Pac-12 admits that under the Scheduling Agreement, OSU and WSU would each participate in six football games against MWC opponents during the 2024-2025 season. The Pac-12 further admits that under the Scheduling Agreement, the MWC received more than $14 million in compensation from Pac-12 member schools, which far exceeded the market value of integrating OSU and WSU into the MWC's schedule. The Pac-12 denies any remaining allegations in Paragraph 150.

151. The Pac-12 admits that in the fall of 2023, the Pac-12 and its two remaining schools, OSU and WSU, faced the prospect of a 2024-2025 season without a full schedule of football games

20

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

for their student athletes and limited time (a) to recruit new members and remain eligible to participate as a conference in the FBS and (b) before the football transfer window was set to open. The Pac-12 denies any remaining allegations in Paragraph 151.

152. The Pac-12 admits that under the Scheduling Agreement, OSU and WSU each participated in six football games against MWC opponents during the 2024-2025 season. The Pac-12 further admits that under the Scheduling Agreement, the MWC received more than $14 million in compensation from Pac-12 member schools, which far exceeded the market value of integrating OSU and WSU into the MWC's schedule. The Pac-12 further states that although the Scheduling Agreement states that the MWC planned to share with the Pac-12 "confidential information" and "unique access to MWC Member Institutions" to which the Pac-12 "would not otherwise be entitled," no such "confidential information" or "unique access" was provided. The Pac-12 further states that the purported justifications for the Termination Fees set forth in the Scheduling Agreement by the MWC are pretextual, illusory, and designed by the MWC solely to conceal its anticompetitive purpose. The Pac-12 denies any remaining allegations in Paragraph 152.

153. The Pac-12 admits that under the Scheduling Agreement, OSU and WSU each participated in six football games against MWC opponents during the 2024-2025 season. The Pac-12 further admits that under the Scheduling Agreement, the MWC received more than $14 million in compensation from Pac-12 member schools, which far exceeded the market value of integrating OSU and WSU into the MWC's schedule. The Pac-12 further states that although the Scheduling Agreement states that the MWC planned to share with the Pac-12 "confidential information" and "unique access to MWC Member Institutions" to which the Pac-12 "would not otherwise be entitled," no such "confidential information" or "unique access" was provided. The Pac-12 further states that the purported justifications for the Termination Fees set forth in the Scheduling Agreement by the MWC are pretextual, illusory, and designed by the MWC solely to conceal its anticompetitive purpose. The Pac-12 denies any remaining allegations in Paragraph 153.

154. The Pac-12 admits that under the Scheduling Agreement, OSU and WSU each participated in six football games against MWC opponents during the 2024-2025 season. The Pac-12 further admits that under the Scheduling Agreement, the MWC received more than $14 million

21

6122488

in compensation from Pac-12 member schools, which far exceeded the market value of integrating OSU and WSU into the MWC's schedule. The Pac-12 further states that although the Scheduling Agreement states that the MWC planned to share with the Pac-12 "confidential information" and "unique access to MWC Member Institutions" to which the Pac-12 "would not otherwise be entitled," no such "confidential information" or "unique access" was provided. The Pac-12 further states that the purported justifications for the Termination Fees set forth in the Scheduling Agreement by the MWC are pretextual, illusory, and designed by the MWC solely to conceal its anticompetitive purpose. The Pac-12 denies any remaining allegations in Paragraph 154.

155. The allegations in this paragraph state legal conclusions to which no response is required. To the extent a response is required, the Pac-12 denies.

156. The allegations in this paragraph state legal conclusions to which no response is required. To the extent a response is required, the Pac-12 denies.

157. The Pac-12 admits that the MWC seeks the stated relief but denies that the MWC is entitled to any such relief.

158. The Pac-12 admits that the MWC seeks the stated relief but denies that the MWC is entitled to any such relief.

### THE PAC-12'S DEFENSES

The Pac-12 asserts the following defenses at law and in equity. The Pac-12 further reserves all additional defenses under Federal Rule of Civil Procedure 8(c) and any other defense that may now exist or that may in the future be available based on further discovery or factual investigation in this action. The Pac-12 denies that Defendant is entitled to any relief whatsoever. By setting forth the defenses asserted below, the Pac-12 does not concede that it bears the burden of proof on any of the issues raised in these defenses. Furthermore, all such defenses are pled in the alternative, and do not constitute an admission of liability or an admission that Defendant is entitled to any relief whatsoever.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Defendant's Counterclaims, and each cause of action alleged therein, fail to state a claim

22

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO
THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

upon which relief may be granted against the Pac-12 and further fail to state facts sufficient to entitle Defendant to the relief sought, or any relief whatsoever against the Pac-12.

## SECOND AFFIRMATIVE DEFENSE

### (Not an Ancillary Restraint and No Procompetitive Justification)

Defendant's declaratory relief claim fails, in whole or in part, because the Termination Fees (hereinafter "Poaching Penalty") are not an ancillary restraint to competition and has no procompetitive justification.  The Poaching Penalty is not subordinate or collateral to the Scheduling Agreement, the purpose of which is to schedule football games for the 2024-2025 season, as it does nothing to increase the amount of college football played and is designed solely to stifle competition.

## THIRD AFFIRMATIVE DEFENSE

### (Performance and No Breach)

Defendant's breach of contract claim fails because Pac-12 performed all duties under the Scheduling Agreement other than duties that were prevented or excused and therefore never breached.  For example, Pac-12 paid the Administrative Fee and the Participation Fees, and Pac-12 negotiated in good-faith the Definitive Transaction.  And Defendant's tortious interference with contractual relations claim fails because, on information and belief, Boise State University, California State University, Fresno, Colorado State University, San Diego State University, and Utah State University (collectively "the Incoming MWC Five") performed all duties under their membership contracts with MWC other than duties that were prevented or excused and therefore never breached.  For example, the Incoming MWC Five schools timely submitted formal resignations from the MWC pursuant to the MWC bylaws.

## FOURTH AFFIRMATIVE DEFENSE

### (Excuse of Performance)

Defendant's breach of contract claim fails because, to the extent that the Pac-12 did not perform any duties under the Scheduling Agreement, it was excused from performance based on illegality and impossibility.  Pac-12 was excused from paying the Poaching Penalty because, *inter alia*, the Poaching Penalty violates the Sherman Act, the Cartwright Act, and California state law

23

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

regarding liquidated damages.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure of Causation)

Defendant's breach of contract claim fails because it cannot prove that any alleged breach by the Pac-12 caused any alleged injury or damages to Defendant, and to the extent that any injury occurred, it was caused by intervening and superseding factors, such as the Incoming MWC Five's decisions to leave the conference, third party media companies, and other conference's scheduling and membership decisions.

## SIXTH AFFIRMATIVE DEFENSE

### (Illegality and Lack of Enforceability)

Defendant's breach of contract claim fails because the provisions of the Scheduling Agreement that it seeks to enforce are illegal and unenforceable under the Sherman Act and the Cartwright Act and are unenforceable liquidated damages penalties under California law.

## SEVENTH AFFIRMATIVE DEFENSE

### (Payment)

Defendant's breach of contract claim fails because it received and accepted payment of the Administrative Fee and the Participation Fees from the Pac-12 under the terms of the Scheduling Agreement, and any other alleged required payments were excused, unenforceable, or otherwise invalid.

## EIGHTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Defendant's claims for relief are barred by the doctrine of unclean hands. The MWC knew the Pac-12 was running out of time and short on leverage to negotiate a football schedule for its two remaining members for the 2024-2025 season, and it forced the Pac-12 to accept the unprecedented Poaching Penalty provision—wholly unrelated to scheduling football games and designed to limit the Pac-12's ability to compete with the MWC for years into the future. The MWC designed the Poaching Penalty to restrict and limit the Pac-12's ability to make competitive offers to potential members, including MWC members, and to stifle competition for

24

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

years into the future.  The MWC did so punitively and without any legitimate justification for the Poaching Penalty, which is duplicative of the exit fees that MWC schools pay when departing from their conference.

**NINTH AFFIRMATIVE DEFENSE**

**(No Intent to Induce Breach)**

Defendant's tortious interference with contractual relations claim fails because the Pac-12 did not intend to induce any alleged breach or disruption of any contract Defendant held with any third party.  The Pac-12 denies that any of the Incoming MWC Five schools breached any contract or obligation with MWC; the Pac-12 instead offered each school assistance in fulfilling its obligations to the MWC before and during their departures.

**TENTH AFFIRMATIVE DEFENSE**

**(No Independently Wrongful Act)**

Defendant's tortious interference with contractual relations claim fails because the contracts between Defendant and the Incoming MWC Five are at-will contracts, and Pac-12 did not engage in any independently wrongful act.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1138 (2003).  The contracts are at-will because they permit any MWC member to "resign from the conference"—for any reason—by "providing written notice" and paying an exit fee; no vote, approval, or agreement by Defendant is required.  Dkt. No. 79 ¶¶ 132 n.81 at § 1, 134.  And the Pac-12 did not engage in any independently wrongful act relating to the Incoming MWC Five and their contractual obligations with Defendant.  Rather, the Pac-12 provided assistance to these schools in fulfilling their obligations.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No Actual Breach or Disruption)**

Defendant's tortious interference with contractual relations claim fails because the Incoming MWC Five performed all duties under their third-party contracts with Defendant, other than duties that were prevented or excused and therefore never breached, and so there was no actual breach or disruption of contractual relations.

25

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO
THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

**TWELFTH AFFIRMATIVE DEFENSE**

**(No Resulting Damage)**

Defendant's tortious interference with contractual relations claim fails because Defendant suffered no resulting damage from any alleged breach or disruption of its contractual relations with any third party.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Contract Covers Same Subject Matter)**

Defendant's unjust enrichment and quasi-contract claim is barred because the Scheduling Agreement is a valid, express contract that covers the same subject matter as Defendant's claim. *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010).

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(No Benefit Received or Unjustly Retained)**

Defendant's unjust enrichment and quasi-contract claim fails because the Pac-12 did not receive or unjustly retain any benefit at the MWC's expense, and there was no mistake, fraud, coercion, or request in the conferral of any alleged benefit. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). The Pac-12 wholly and completed compensated the MWC for any benefit the Pac-12 received from the Scheduling Agreement via, *inter alia*, the Administrative Fee and the exorbitant Participation Fees, which were far greater than what *any* other school paid for football games.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(No Restitution for Illegal Behavior)**

Defendant's unjust enrichment and quasi-contract claim is barred because Defendant cannot seek equitable relief or restitution for illegal behavior, such as the MWC's violation of antitrust and liquidated damages laws through its attempted enforcement of the Poaching Penalty, and because Defendant cannot bring an unjust enrichment claim to recover on an illegal and/or unenforceable contract provision, like the Poaching Penalty. *See, e.g.*, *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989); *Tarlesson v. Broadway Foreclosure Invs., LLC*, 184

26

6122488

Cal. App. 4th 931, 938 (2010); *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992).  Defendant may not recover equitably for conduct that violates the antitrust laws.  *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77–79 (1982); *Cont'l Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 261 (1909).

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Equitable and Promissory Estoppel)

Defendant's clams for relief are barred by the doctrine of equitable estoppel because Defendant may not benefit from its own wrongdoing.  *See, e.g.*, *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011).  Defendant knew that the Poaching Penalty was unlawful and unenforceable under the Sherman Act, the Cartwright Act, and state law regarding liquidated damages and that the Pac-12 had no other option but to accept the Scheduling Agreement with the penalty included.  Defendant intended to induce Pac-12's reliance on its representations that entirety of the agreement was lawful and would promote competition and support football, with the goal of saddling the Pac-12 with exorbitant fees and hinder the Pac-12's ability to compete for years into the future.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Laches / Equitable Delay / Unreasonable Delay)

The Pac-12 is informed and believes and thereon alleges that Defendant delayed asserting its claims without good cause despite knowing the alleged facts earlier.  The MWC unreasonable delay caused substantial prejudice to the Pac-12, including by prolonging the length of this dispute, causing uncertainty regarding the Pac-12's need to pay the Poaching Penalty, and further restricting its ability to compete for member schools.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Consent)

Defendant's clams for relief are barred because Defendant expressly or impliedly consented to the conduct, acts or omissions complained of in the Countercomplaint, including by providing any alleged unique access, "game-week interactions," "campus visits," "athletics-department coordination," "broadcast production meetings," "shared competitive platforms," or

6122488

"enhanced familiarity with and visibility into the Departing Members' personnel, facilities, and markets," in exchange for the Administrative Fee and the exorbitant Participation Fees.

### NINTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Defendant's clams for relief are barred, in whole or in part, by the doctrine of waiver. Defendant intentionally relinquished any right to recover for any alleged injury related to nonpayment of the Poaching Penalty by including an unlawful and unenforceable provision in the Scheduling Agreement. *See United States v. Acad. Mortg. Corp.*, 2020 WL 7056017, at *3 (N.D. Cal. Dec. 2, 2020). Defendant also intentionally relinquished any right to recover additional fees from the Pac-12 by setting the Administrative and Participation Fees.

### TWENTIETH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

The Pac-12 is informed and believes and thereon alleges that Defendant failed to take reasonable steps to mitigate any injuries, delayed unreasonably in mitigating injuries, and/or took steps that have compounded the alleged injuries. The Pac-12 denies the MWC endured any damage whatsoever from its inability to recover the illegal Poaching Penalty because, *inter alia*, any impact was covered by the Administrative and Participation Fees. The MWC did not, among other things, attempt to renegotiate a second year of the Scheduling Agreement with reasonable Participation Fees, provide better offers for its members or a stronger media rights deal, or ensure any "unique access" or "confidential information" was kept private or secure among MWC schools.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Lack of Non-Speculative Damages)

Defendant's claims for relief are barred, in whole or in part, because Defendant has not suffered any calculable, non-speculative damages. Defendant vaguely asserts it was not compensated for providing "unique access" and "confidential information," which the Pac-12 denies, and to the extent these caused the MWC injury, any resulting damage is speculative and noncalculable.

28

6122488

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (No Actual Injury)

Defendant's claims for relief are barred, in whole or in part, because Defendant has not suffered an injury to its business or property due to any of the Pac-12's actions alleged in the Countercomplaint.  In the Scheduling Agreement, Defendant received compensation for the football games and any related access or information through the Administrative Fee and exorbitant Participation Fees; it endured no other injury.  And Defendant did not endure any injury from the Incoming MWC Five's departure from Defendant's conference, which complied with all contractual obligations.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Good Faith / Justification)

The Countercomplaint, and each cause of action alleged therein, is barred to the extent that the Pac-12's conduct was justified or privileged.  The Pac-12's conduct was justified or privileged because Pac-12 complied with all applicable laws, rules, and regulations concerning the wrongful activity alleged in the Countercomplaint, including the Sherman Act, the Cartwright Act, and state liquidated damages law.  Additionally, the Pac-12's conduct was justified or privileged because the Pac-12 acted in accordance with the terms of the Scheduling Agreement and the terms of the Incoming MWC Five's contractual obligations to Defendant.  Moreover, the Pac-12's conduct was also justified or privileged because its actions, conduct, and/or dealings were lawful, and were carried out in good faith and for legitimate business purposes.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (In Pari Delicto)

Defendant's breach of contract and unjust enrichment and quasi-contract claims are barred, in whole or in part, by the doctrine of *in pari delicto*, because Defendant is at least equally responsible for any harmful conduct.  Defendant insisted on including the unlawful Poaching Penalty in the Scheduling Agreement, knowing that the Pac-12 was out of time and options for scheduling football games for its remaining schools.  It foisted this unlawful provision on the Pac-12 over the Pac-12's objection, knowing it was unlawful and unenforceable, and knowing it

29

6122488

would restrain competition and the Pac-12's ability to compete for years into the future.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Mistake)

Defendant's claims for relief are barred, in whole or in part, by the doctrine of mistake, including but not limited to mistake of fact and mistake of law.  Cal. Civ. Code § 1578(1), (2).

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

Defendant's claims for relief are barred, in whole or in part, because Defendant would be unjustly enriched if allowed to recover any part of the damages alleged in the counterclaims. Defendant received substantial benefit from the Scheduling Agreement, including but not limited to the receipt of the Administrative Fee and Participation Fees; any additional recovery from the Pac-12, including for any part of the Poaching Penalty, would be unjust and at Pac-12's expense. *See Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021).  The Poaching Penalty was included in the Scheduling Agreement through mistake, fraud, coercion, and/or request, because Defendant insisted on its inclusion over the Pac-12's objection, knowing the Pac-12 was short on time and options for scheduling football.  *See Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023).  Defendant also received substantial benefit from its contracts with the Incoming Five schools, including their membership fees; any recovery from the Pac-12 for any reason related to those schools' departure would be unjust and at the Pac-12's expense, particularly because the Pac-12 assisted these schools in fulfilling their contractual obligations to Defendant by providing financial support toward their exit fees.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Reservation of Additional Defenses)

The Pac-12 lacks sufficient knowledge and information upon which to form a belief as to whether it may have additional, yet unstated, affirmative defenses.  The Pac-12 reserves the right to assert additional affirmative defenses in the event discovery indicates that such affirmative defenses would be appropriate in this matter.

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO
THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488

Dated:  April 24, 2026

KEKER, VAN NEST & PETERS LLP

By:    */s/ Eric H. MacMichael*
ERIC H. MACMICHAEL
NICHOLAS S. GOLDBERG
ANJALI SRINIVASAN
FRANCO E. MUZZIO
KELLY S. KAUFMAN
PAUL H. VON AUTENRIED
CHARLOTTE KAMAI

Attorneys for Plaintiff THE PAC-12
CONFERENCE

PLAINTIFF AND COUNTER-DEFENDANT THE PAC-12 CONFERENCE'S ANSWER TO
THE MOUNTAIN WEST CONFERENCE'S COUNTERCLAIMS
Case No. 5:24-cv-6685-SVK

6122488